OTIS C. BRUNSON, ADMINISTRATOR OF BOBBY RAY BRUNSON, MINOR CHILD, DECEASED, v. HAROLD HARTWELL GAINEY.

(Filed 12 December, 1956.)

**1. Automobiles § 19—**

If, under the circumstances, a reasonably prudent man could foresee and anticipate that an emergency would arise as a result of defendant's own conduct, defendant may not excuse himself on the ground that he was called upon to act in the emergency thus created.

**2. Automobiles § 25—**

A motorist is required by statute to operate his vehicle so as not to endanger or be likely to endanger any person or property, and to reduce speed when special hazards exist with respect to a narrow or winding roadway, pedestrians or other traffic. G.S. 20-140, G.S. 20-141.

**3. Automobiles § 34—**

A motorist approaching a place where he knows children of tender years are likely to be on or near the highway is under duty to exercise care for their protection in recognition of their childish impulses.

**4. Automobiles § 46—Evidence held to require instruction that doctrine of sudden emergency does not apply if defendant's own negligence causes emergency.**

There was evidence from which the jury could find that defendant knew he was approaching a place where children of tender years were likely to be on the highway, that defendant was traveling along the dirt road in the area at 40 miles per hour, and that when the child which defendant struck was first visible he was in the center of the road, without anything to obstruct vision for a distance of 350 yards, but that defendant was less than 150 feet from the child when he first observed him. Defendant contended to the contrary that the child suddenly ran in front of his car. *Held:* It was error for the court to charge on the doctrine of sudden emergency without also charging, in response to apt request, that a person whose own negligence brings about the emergency may not rely thereon to excuse his negligent conduct, it being a permissible inference from the evidence that the emergency was due to defendant's excessive speed or failure to maintain a proper lookout.

JOHNSON, J., not sitting.

APPEAL by plaintiff from *Hobgood, J.,* February 1956 Regular Term of HARNETT.

Plaintiff seeks to recover damages for the death of a three-year-old son who was struck and killed by an automobile operated by defendant. The tragedy occurred 6 May 1955 on a rural road. Plaintiff alleges that the child was struck and killed as a result of the negligent operation of defendant's automobile. He alleges that the automobile was being operated at a speed of 40 to 45 m.p.h., which speed was neither reasonable nor prudent under the existing circumstances. He alleges defendant was traveling in a neighborhood well known to defendant as a place where children of tender years were accustomed and at a time when they were likely to be at play on the highway. He alleges that plaintiff's intestate, on the opposite side of the road from the home, started to cross the road on the approach of the automobile, and in his attempt to cross was struck and killed; and, if defendant had been operating his automobile at a careful and reasonable rate of speed, maintaining a proper lookout, and in a prudent manner, he could have

seen the child in his attempt to cross the highway in ample time to stop before striking the child.

Defendant by answer admits he was familiar with the road. He admits that the car he was driving struck and killed the child about noon, that the sun was shining. He denies that children were wont to play in the road. He denies that he was operating his vehicle at the speed alleged by plaintiff, asserting that his speed was 30 to 35 m.p.h., which was reasonable and proper under the then existing conditions. He alleges the road he was traveling was "an average dirt road"; that he was observant and "was keeping a proper lookout down the road ahead of him; that as he approached the home of plaintiff's intestate he saw a small child sitting on the porch of said home, but no other person was in sight; that just as he approached the home proper, plaintiff's intestate jumped from behind a bush that was growing along said road or highway directly into the path of the automobile that was being driven by this defendant, and it was impossible for him to have stopped his automobile before striking said child . . ."

The court submitted the case to the jury on two issues: negligence of the defendant and damages. The jury answered the first issue in the negative. Thereupon the court rendered judgment for defendant and plaintiff excepted and appealed.

*Bryan & Bryan for plaintiff appellant.*
*Young, Lamm & Taylor for defendant appellee.*

RODMAN, J.   Plaintiff, by assignments of error 9, 11, 14, and 15, presents for consideration the accuracy of the charge, as related to the defense asserted by defendant, that he was confronted by a sudden emergency.

Plaintiff testified: "that the defendant passed by the deceased's house about three or four times a day, and sometimes more than that; that the defendant passed the deceased's house every single day; that the home of the deceased had a small front yard; that the children of the witness, including the deceased, played in the yard and in the edge of the ditch in front of the house, because the yard was very small; that the witness had four children at that time; that they played in the yard and in the edge of the road every day; that they were playing in the yard and the edge of the road many times when the defendant passed in front of the house . . ."

No person testified that he witnessed the accident. Plaintiff relied largely upon the testimony of Highway Patrolman Williams, who investigated the occurrence. He described the physical conditions as he found them and related statements made to him by defendant. Defendant did not offer any evidence.

It appears from Mr. Williams' description that the home is on the south side of the road, which is approximately fourteen feet wide. At some places the road is sand and gravel with a very hard surface, and in other places it is sandy with just one wheel rut down the center of the road. In front of the house the road was sandy with a one-car path. The depth of the sand in the road ranged from three to seven inches. The road lay in an east-west direction. It was straight for 350 yards approaching plaintiff's house from an easterly direction. From the edge of plaintiff's house to the edge of the road is twelve feet. From the edge of plaintiff's steps to the edge of the road is seven feet. Just north of the center of the road was a patch of blood that covered "a right large area." Defendant told the witness the blood spot marked the point where he struck the child. Defendant's car was in the highway, forty-three feet west of the blood spot. There were skid marks from the blood spot to a point 138 feet east of the blood. There is an embankment on each side of the road. There were trees, bushes, and weeds growing on the embankments. The embankment on the north side of the road is about three feet high. On the north side of the road and about fifty-seven feet east of the house is a mail box.

Because of the bushes and trees, one traveling in a westerly direction would not see the porch of plaintiff's residence when he was more than forty-five feet east of the mail box. From a point where the skid marks started to the front wheels of defendant's car was 181 feet. Defendant told witness "that he was traveling from east to west, and passed the house at approximately 40 miles per hour and that the first thing the defendant knew there was a child in the road in front of him and that he applied his brakes; and that the defendant told the witness that he did not know whether the child was sitting or walking."

In another part of his testimony the witness stated he was "told by the defendant that when the defendant first saw the child the child was in the middle of the road, that he applied his brakes, that he did not know whether the child was sitting or walking at the time he was struck; that the defendant said he was driving about 40 miles per hour at the time."

When defendant pointed out the skid marks to witness, he asked defendant "why it was so long to the skid marks east of the car and that the defendant answered that he was traveling about 40 miles per hour when he saw the child, and that he attempted to stop before striking the child . . ."

In answer to defendant's contention that the jury should not find that the child came to his death by the negligence of defendant for that defendant was confronted with a sudden emergency, plaintiff requested the court to charge the jury: "The doctrine of sudden emergency is

unavailing to one who, by his own negligence, placed himself in such a position of emergency."

Plaintiff also requested the court to charge the jury: "The duty of due care on the part of the driver does not just begin when the victim, infant or adult, is actually observed in a perilous position, but as soon as the victim should have been foreseen by the driver by his keeping a proper lookout, prior to the injury or death."

The court declined to give either of the requests of plaintiff, and this refusal is made the basis of assignments of error 14 and 15.

The court charged on this phase of the case as follows: "Now, I would like to charge you thus as to the defendant's contention with reference to sudden emergency. I charge you, gentlemen of the jury, that it would be incumbent upon you, as jurors, to determine whether or not a sudden emergency or peril did in fact exist at the time and place of the accident, and if you do find that an emergency did exist at that time, (I charge you that one who is required to act in an emergency is not held by law to the wisest choice of conduct, but only to such choice as a person of ordinary care and prudence similarly situated would have made, because it is well understood that a person in the presence of an emergency is not usually held to the same deliberation and circumspect care as in ordinary circumstances where no emergency exists. The standard of conduct required in an emergency, as elsewhere, is that of a prudent man.)"

Plaintiff excepted to the portion of the charge in parentheses and assigns that portion as prejudicial error. Again, on the question of sudden emergency, the court charged: " 'when a person is confronted with a sudden emergency he is not held by law to the same degree of care as under ordinary circumstances, but only the degree of care which an ordinary prudent person would use under similar circumstances,' and that would be for you, the jury, to determine."

Plaintiff excepted to the foregoing portion of the charge, and this constitutes his eleventh exception and assignment of error.

The instructions requested by plaintiff point to the error in the charge. One cannot, by his negligent conduct, permit an emergency to arise and then excuse himself on the ground that he was called upon to act in an emergency. Foreseeability is the test of liability for asserted negligent injuries. If a reasonably prudent man can foresee and anticipate that injury is apt to result from his conduct, prudence would dictate and the law demands that he exercise reasonable care to prevent the injury.

In *Goss v. Williams*, 196 N.C. 213, 145 S.E. 169, this instruction was given approval: "You are instructed that the mere fact that a child runs in front of a moving motor vehicle so suddenly that the driver had no notice of danger, does not necessarily relieve a defendant from lia-

bility.  There still remains the question whether the negligent driving of the automobile made it impossible for the driver to avoid the accident after seeing the child, or when by the exercise of reasonable care, such driver could have seen the child in time to avoid the injury, there being a greater degree of watchfulness and care required of automobile drivers as to children than adults."

In *Bullock v. Williams,* 212 N.C. 113, 193 S.E. 170, the Court gave its approval to this charge: "An automobile driver, who by the negligence of another, and not by his own negligence, is suddenly confronted with an emergency and is compelled to act instantly to avoid an accident or injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make; even though he didn't make a wise choice, and whether he used reasonable care under the circumstances is ordinarily a question for the jury."

Speaking with respect to the duty of one to exercise care to avoid a situation which might result in an emergency, the Missouri Court said, in *Windsor v. McKee,* 22 S.W. 2d 65: "Plaintiff complains that instruction C is erroneous because it does not require the jury to find, before excusing the conduct of defendant McKee, on the ground that he acted in an emergency, that such emergency was not brought about by the negligence of McKee himself.  It is well-recognized doctrine that a person may not excuse his conduct on the ground that he acted in an emergency, or under the influence of a sudden peril, where the emergency or peril resulted from his own negligence.  *Hall v. St. Louis-San Francisco Ry. Co.* (Mo. Sup.) 240 S.W. 175; *Garvey v. Ladd* (Mo. App.) 266 S.W. 727.  The doctrine as thus stated is somewhat misleading.  It is not the conduct in the emergency that the law does not excuse.  There is no culpability in such conduct.  It is the negligent conduct which brought about the emergency which the law does not excuse.  The act done in the emergency immediately causing the injury is a mere link in the causal chain connecting the negligent act, which brought about the emergency, with the injury.  It is this negligent act, and not the non-negligent act done in the emergency, that liability springs from."  *Barnes v. Caulbourne,* 240 N.C. 721, 83 S.E. 2d 898; *A. C. L. R. R. v. Trucking Co.,* 238 N.C. 422, 78 S.E. 2d 159; *Butler v. Allen,* 233 N.C. 484, 64 S.E. 2d 561; *Sparks v. Willis,* 228 N.C. 25, 44 S.E. 2d 343; *Hoke v. Greyhound Corp.,* 227 N.C. 412, 42 S.E. 2d 593; *Independent Oil Refining Co. v. Lueders,* 134 So. 418 (La.); *Gootar v. Levin,* 293 P. 706 (Cal.); *Harper v. Crislip,* 138 S.E. 93 (W. Va.).

The statute law (G.S. 20-140) commands the operator of an automobile to drive with caution and circumspection.  He is commanded not to operate in a manner so as to endanger or be likely to endanger any person or property.  Further statutory directions (G.S. 20-141) are

given with respect to speed when traveling upon a narrow or winding roadway or when special hazards exist with respect to pedestrians or other traffic.

There was evidence from which the jury could find defendant knew he was approaching a place where he was likely to find children of tender years on the highway. This knowledge would impose a duty to exercise care for their protection and a recognition of childish impulses. *Pope v. Patterson*, 243 N.C. 425, 90 S.E. 2d 706; *Greene v. Board of Education*, 237 N.C. 336, 75 S.E. 2d 129; *Hawkins v. Simpson*, 237 N.C. 155, 74 S.E. 2d 331; *Hughes v. Thayer*, 229 N.C. 773, 51 S.E. 2d 488; *Henson v. Wilson*, 225 N.C. 417, 35 S.E. 2d 245; *S. v. Gray*, 180 N.C. 697, 104 S.E. 647. Was the emergency on which defendant relies due to excessive speed?

There was evidence from which the jury could find that when the child was first seen he was in the center of the road, and defendant did not know whether the child was sitting or walking. The evidence would justify a finding that the point where the child was struck was visible for a distance of 350 yards, but defendant was less than 150 feet from the child when he first observed him, and it was then too late to avoid the child. Was the emergency on which defendant relies due to his failure to keep a proper lookout?

If the peril suddenly confronting the defendant was due to excessive speed or to his failure to maintain a proper lookout, the fact that care was exercised after the discovery of the peril would not excuse the negligent conduct which was the proximate cause of the injury and damage. The court should have so instructed the jury.

New trial.

JOHNSON, J., not sitting.