GRADY ENNIS, ADMINISTRATOR OF THE ESTATE OF CECIL MAC ENNIS, DECEASED v. TALLIE DUPREE AND WIFE, SARAH DUPREE.

(Filed 21 November 1962.)

**1. Automobiles § 7—**

A motorist is under duty to maintain a proper lookout in the direction of travel and is charged with the duty of seeing what he should see in the exercise of reasonable care in this respect.

**2. Automobiles § 34—**

A motorist is not an insurer of the safety of children along the highway and may not be held liable for striking a child whose presence in the motorist's line of travel could not have reasonably been foreseen, but a motorist may be held liable if his speed or failure to maintain a reasonable lookout prevents him from avoiding injury to a child suddenly running in his path of travel.

**3. Automobiles § 41m—**

Evidence that defendant motorist did not see the child on his bicycle until the child was immediately in front of her vehicle, and permitting the inference that had defendant been maintaining a reasonable lookout she could have seen the child riding along the highway in time to have avoided striking the child when the child suddenly rode in front of her vehicle, *is held* to warrant the submission of the issue of defendant's negligence to the jury.

**4. Automobiles § 54f—**

Where there is sufficient evidence of negligence of the operator of a motor vehicle to be submitted to the jury on that issue, evidence that the vehicle was registered in the name of the other defendant takes the issue of such other defendant's liability to the jury. G.S. 20-71.1(b).

**5. Negligence §§ 16, 26—**

Since an eight year old boy is rebuttably presumed incapable of contributory negligence, nonsuit may not be entered on the ground of such child's contributory negligence.

RODMAN AND SHARP, JJ. dissent.

APPEAL by plaintiff from *Clark (Edward B.), S.J.,* 4 June 1962 Civil Term of HARNETT.

Civil action to recover damages for the death of an eight-year-old boy in a bicycle-automobile collision, allegedly caused by the *feme* defendant's negligent operation of a 1958 Plymouth station wagon owned by and registered in the name of her husband, the male defendant.

From a judgment of involuntary nonsuit at the close of plaintiff's case, he appeals.

*Taylor & Morgan and Everette L. Doffermyre by Everette L. Doffermyre for plaintiff appellant.*

*Dupree & Strickland by Franklin T. Dupree and Dupree, Weaver, Horton & Cockman by F. T. Dupree, Jr., for defendant appellees.*

PARKER, J. Plaintiff alleged, *inter alia*, that the *feme* defendant was negligent in driving the 1958 Plymouth station wagon in that she failed to keep a proper lookout in the direction she was traveling.

Defendants filed a joint answer denying any negligence on the part of the *feme* defendant in the operation of the station wagon, and conditionally pleading as a bar to plaintiff's action contributory negligence of plaintiff's intestate.

Plaintiff examined *feme* defendant as an adverse witness, and offered other evidence. Plaintiff's evidence, when considered in the light most favorable to him, tends to show these facts:

About 3:40 o'clock p.m. on 16 February 1959 Mrs. Sarah Dupree, a school teacher, was driving a 1958 Plymouth station wagon on her right side of the road in a northerly direction on State Highway #55, traveling from the town of Coats to the town of Angier. The station wagon was owned by her husband, the male defendant, was registered in his name, and was maintained by him for his wife's pleasure and convenience. Mrs. Hilda Rose Lee, Frances Hockaday and Sheila Dupree, a daughter of defendants, were riding in the station wagon as passengers.

Highway #55, which has pavement 24 feet wide and dirt shoulders several feet wide on each side of the pavement, is straight for several hundred feet south of the place where the collision on the highway occurred. At or near the scene of the collision two dirt roads, one from the east and one from the west, intersect the highway. The road intersecting the highway from the east is slightly south of the road that intersects the highway from the west. William Ragsdale, a registered civil engineer and plaintiff's witness, testified in respect to the dirt road from the west: It "is a path that leads from a dwelling house which lies on the west side of the road.* * *On the west side of the road there is an embankment that projects up higher than the surface

on the road." The dirt road that intersects the highway from the east is about 12 feet wide, goes down into the highway at a fairly steep angle, and has no highway sign on it. There is an embankment on the east side of highway and south of the intersecting road on the east ten feet in height. According to measurements made by State Highway Patrolman Stuart Moore, the distance from the pavement to the embankment on the east side of the highway at or near the scene of the collision is 20 feet: it is 32 feet from the center line of the highway to the embankment.

At and near the scene of the collision *feme* defendant was traveling on the highway at a speed of 40 to 45 miles an hour. It was open country, and the speed limit was 55 miles an hour. No other motor cars were near. She was looking straight ahead. She testified: "The first time I saw the child was when he shot in front of me. I swerved to keep from hitting the child. I am not sure if the bicycle was in front of me when I swerved. I saw the child as it shot, it seemed to drop from the heavens or somewhere. I do not know where, and I swerved. I saw the child for the first time when the child was in front of me and I swerved my car. I never did see the child on the side of the road or riding across the road. You could not see up that pathway 10 feet embankment. I did not see the child up there. I did not see the child on the hard surface peddling in front of me." She also testified: "When I saw and struck the child it must have happened in a split second." She did not apply her brakes after hitting the child. Her station wagon swerved to the left of the highway, went down the highway on its west side about 120 feet, and turned over in the ditch on the left side of the highway.

Patrolman Moore arrived at the scene shortly after the collision. On the west side of the highway, about 18 inches from the center line, he saw a scooped-out place at a point across from the right-hand ditch of the dirt road intersecting the highway from the east. The station wagon was turned over in the ditch on the west side of the highway 122 feet from the scooped-out place. He testified: "I found the bicycle on the west side of the road and the body of the deceased child lying in the ditch beside the station wagon." He further testified: "She [*feme* defendant] advised that the child was in front of her. She saw it and in a flash she struck the child. She said the first time she saw the child, the child was in front of her, that she had not seen the child just a flash before she struck it."

Cecil Mac Ennis was riding a 26" bicycle. When killed, he was eight years, eleven months old, lacking three days. Defendants admit in their answer Cecil Mac Ennis died as a result of the injuries which he received in the collision.

The Court in *Dixon v. Lilly,* 257 N.C. 228,. 125 S.E. 2d 426, quotes from Blashfield, Cyclopedia of Automobile Law and Practice, Per. Ed., Vol. 2A, section 1498, as follows:

> "Drivers or owners of motor vehicles are not insurers against all accidents wherein children are injured. Accordingly, a driver proceeding along a street or highway in a lawful manner using ordinary and reasonable caution for the safety of others, including children, will not be held liable for striking a child whose presence in the street could not reasonably be foreseen. He is not required to anticipate the appearance of children in his pathway, under ordinary circumstances, from behind parked automobiles or other obstructions.
>
> "Thus, when a motor vehicle is proceeding upon a street at a lawful speed, and is obeying all the requirements of the law of the road and all the regulations for the operation of such machine, the driver is not generally liable for injuries received by a child who darts in front of the machine so suddenly that its driver cannot stop or otherwise avoid injuring him."

The fact that an automobile driver was driving at an unreasonable or dangerous speed in violation of a statute or ordinance, or was operating the automobile without keeping a proper lookout, may deprive him of all right to escape liability for striking a child which runs suddenly in front of his machine. There still remains the question whether the negligent driving of the automobile made it impossible for the driver of the car, under the circumstances then and there existing, to avoid the accident after seeing the child, or when in the exercise of proper care he could have seen the child, in time to avoid the injury. *Goss v. Williams,* 196 N.C. 213, 145 S.E. 169; *Moore v. Powell,* 205 N.C. 636, 172 S.E. 327; *Kelly v. Hunsucker,* 211 N.C. 153, 189 S.E. 664; *Butler v. Allen,* 233 N.C. 484, 64 S.E. 2d 561; *Brunson v. Gainey,* 245 N.C. 152, 95 S.E. 2d 514; *Cassetta v. Compton,* 256 N.C. 71, 123 S.E. 2d 222; Blashfield, *ibid,* sec. 1499; 60 C.J.S., Motor Vehicles, sec. 396, b, pp. 968-970; 5A Am. Jur., Automobiles and Highway Traffic (1956), sec. 472.

See also *S. v. Gash,* 177 N.C. 595, 99 S.E. 337, where the Court held the following part of the charge to be without error: "If the defendant was operating the car lawfully and at the rate of speed permitted by law, yet if by reason of a failure to keep a proper lookout he failed to see the deceased in time to avoid injuring him, and 'by reason of his carelessness and negligence in failing to keep this lookout' he caused the death of the child, he was guilty." See also *S. v. Gray,* 180 N.C. 697, 104 S.E. 647.

In *Wall v. Bain*, 222 N.C. 375, 23 S.E. 2d 330, the Court said: "It is the duty of the driver of a motor vehicle not merely to *look*, but to *keep an outlook* in the direction of travel; and he is held to the duty of seeing what he ought to have seen."

In *Tibbetts v. Harbach*, 135 Me. 397, 198 A. 610, the Supreme Judicial Court of Maine tersely and accurately said: "An automobile driver is bound to use his eyes, and to see seasonably that which is open and apparent and govern himself suitably."

*Feme* defendant in the daytime was traveling 40 to 45 miles an hour along a State highway with pavement 24 feet wide and dirt shoulders on each side, and straight in the direction she was traveling for several hundred feet before the place of the collision. The scooped-out place on the highway, 18 inches west of its center line, permits the reasonable inference that the child on his bicycle was struck at that point. There was nothing to obstruct her view as she traveled along the straight highway for several hundred feet before striking the child, and yet she did not see the child on his bicycle until "a split second" before she struck him, when, in her words, the child "shot in front of me* * * it seemed to drop from the heavens or somewhere." Although the evidence does not disclose the direction in which the child was riding his bicycle, or where he was a short time before he was struck, yet, in our opinion, the evidence permits the inference that her failure to see the child on his bicycle riding on the highway, when she was some appreciable distance away from him, was due to her negligence in failing to keep a proper and adequate lookout.

This is a borderline case, but considering the evidence in the light most favorable to plaintiff, it is our opinion that it would permit, but not compel, a jury finding that the *feme* defendant was negligent in operating the station wagon without keeping a proper lookout, that such negligence made it impossible for her to avoid the collision with the child, when by the exercise of due care she could and should have seen the child in time to avoid striking him, and that such negligence was the proximate cause of her striking the child, which caused injuries resulting in his death. The judgment of involuntary nonsuit of plaintiff's action against *feme* defendant was improvidently entered. Consequently, the court erred in nonsuiting plaintiff's case against the male defendant, the registered owner of the station wagon. G.S. 20-71.1 (b); *Hamilton v. McCash*, 257 N.C. 611, 127 S.E. 2d 214.

A compusory nonsuit on the ground that plaintiff's intestate, an eight-year-old boy, was guilty of legal contributory negligence is not permissible, because of the rebuttable presumption that the eight-year-old boy was incapable of contributory negligence. *Hamilton v. McCash, supra.*

We do not think defendants are entitled to have the nonsuit sustained on the ground of a fatal variance between *allegata et probata.* If plaintiff desires to amend his complaint to allege that the child was riding his bicycle in a westerly direction, he may make such a motion before the court below.

The judgment of compulsory nonsuit is

Reversed.

RODMAN AND SHARP, JJ., dissent.