TROY MOORE, DEWEY PANNELL AND HERBERT PANNELL, T/A MOORE'S SERVICE STATION AND GROCERY v. BEARD-LANEY, INCORPORATED, AND LEWIS JOE TAYLOR.

(Filed 29 January, 1965.)

**1. Evidence § 2—**

The court will take judicial notice that gasoline is a flammable commodity.

**2. Negligence § 4—**

A person handling an inherently dangerous commodity, like gasoline, is under duty to use care commensurate with the known exceptional danger.

**3. Negligence § 24a—**

Evidence tending to show that an employee in charge of delivering gasoline to the storage tanks of a filling station was warned that one of the tanks might overflow, that the only way to see when the tank was full was by watching the air vent on the top of the tank, that the employee hooked the tank trailer to the storage tank and started pumping gasoline, then went into the store on the premises, and that the tank overflowed while he was in the store, resulting in the damage in suit, *is held* sufficient to be submitted to the jury on the issue of negligence.

**4. Negligence §§ 26, 27—Evidence held not to show contributory or intervening negligence absolving defendant as a matter of law.**

The evidence tended to show that one of the owners of a gasoline filling station, upon seeing one of the storage tanks overflowing gasoline being pumped from defendant's unattended tank trailer, cut off the electric switch of the pump pumping gasoline into the storage tank, there being no raw gasoline on the ground around the pump, and that a spark emitted when the pump was cut off ignited gasoline fumes, *held* not to show contributory or insulating negligence as a matter of law, since the original negligence continued and played a substantial part in proximately causing the damage, and the act of the proprietor in the sudden emergency was a natural reaction motivated by an attempt to safeguard life and property, and could have been reasonably foreseen and expected under the circumstances.

**5. Negligence § 8—**

The original negligence of one party cannot be insulated by the negligence of another so long as the original negligence plays a substantial and proximate part in causing the injury or loss, or so long as the intervening act and resultant injury could have been reasonably foreseen and expected by the author of the original negligence, and the question of intervening negligence is ordinarily for the jury.

ON *certiorari* from *McLean, J.,* April 1964 Civil Session of RUTHERFORD.

Civil action for damages for the destruction of plaintiffs' property by fire alleged to have been caused by defendants' actionable negligence.

Defendants in their answer deny negligence, plead contributory negligence of plaintiffs as a bar to recovery, and alleged a counterclaim for damages for the destruction of corporate defendant's tank trailer allegedly caused by plaintiffs' actionable negligence.

Plaintiffs, replying to defendants' answer, alleged the corporate defendant is not the real party in interest to recover damages for the destruction by fire of its tank trailer, for the reason that it has been paid in full for its loss by its insurer, Underwriters at Lloyds.

On motion of Underwriters at Lloyds, an order was entered by the court making them a party defendant. They filed an answer denying any negligence on defendants' part, and alleged they had paid $7,000 to the corporate defendant in full compensation for its loss by fire of its tank trailer, and consequently was subrogated to all rights which the corporate defendant had to recover from plaintiffs, and alleged a counterclaim against plaintiffs in the amount of $7,000, averring that the destruction by fire of the corporate defendants' tank trailer was caused by the actionable negligence of plaintiffs.

At the close of plaintiffs' evidence, the trial judge entered a judgment of compulsory nonsuit, and plaintiffs excepted and appealed. Whereupon, Underwriters at Lloyds took a voluntary nonsuit.

Plaintiffs for valid reasons were unable to perfect their appeal within the time prescribed by the rules of practice in the Supreme Court. We allowed *certiorari* to bring up for review the judgment of compulsory nonsuit.

*J. H. Burwell, Jr. and Carroll W. Walden, Jr., for plaintiff appellants.*
*No counsel for defendants.*

PARKER, J. These facts are alleged in the complaint and admitted in defendants' answer: The corporate defendant is a South Carolina corporation, which does business in North Carolina. The defendant Lewis Joe Taylor on 28 August 1962 was an employee of the corporate defendant, and was at all times here relevant acting as agent and employee of the corporate defendant. The plaintiffs operate a retail service station, grocery store and a wholesale petroleum products business near the village of Avondale in Rutherford County, North Carolina. They operate this business under the trade name of Moore's Service Station and Grocery. The corporate defendant is engaged in the business of transporting gasoline and other petroleum products, and that at all times here relevant the defendant Taylor was employed by the corporate defendant as a truck driver to drive its truck and deliver gasoline and other petroleum products transported by it. On 28 August 1962 the corporate defendant, acting by and through its agent and employee, the defendant Taylor, was making a delivery of gasoline to the premises of plaintiffs.

Plaintiffs' evidence, considered in the light most favorable to them, would permit a jury to find the following facts and draw these reasonable inferences therefrom: In front of plaintiffs' service station were three retail gasoline pumps erected on a concrete island. Some distance from the retail gasoline pumps (the map mentioned in the evidence showing the distances is not before us) plaintiffs had large gasoline wholesale tanks. The total capacity of all tanks on plaintiffs' premises was 22,000 gallons. On 28 August 1962 Taylor drove the corporate defendant's tractor-tank trailer loaded with gasoline to plaintiffs' place of business to deliver to them 7,000 gallons of gasoline. He went in the store and Troy Moore told him, when he hooked up the tank trailer with the storage tank, to watch closely the last compartment of his tank trailer, that it was possible that it would overflow the high-test tank of gasoline. Taylor went out of the store, hooked up the tank

trailer to the storage tanks, and started pumping gasoline. He then came back in the store.

There was an air vent on top of the storage tank to indicate whether or not it was overflowing, and whether it was overflowing or not could only be determined by watching it. The storage tank had no gauge to indicate its contents. There was an electric switch in a box on the pump which pumps the gasoline into the storage tank. This electric switch was about three feet from the gasoline storage tanks, and about eight inches from the ground.

There was a safety device on the front of the tank trailer. When the safety lever of this device is pulled, all flow of gasoline out of the tank trailer is stopped. It takes about two seconds to pull the safety lever. The tank trailer had two signal lights on blinking, when the fire occurred. The custom is that the driver of an oil tanker should be with his tanker watching the lever valves, when he is delivering gasoline, so that if anything goes wrong, he can cut off the flow of gasoline.

Dewey Moore Pannell, one of plaintiffs, arrived at the scene at 7 p.m. At that time the tank trailer was unloading premium gasoline into a storage tank through a three-inch hose which led from the rear of the tank trailer to the storage tank. He saw Taylor in the store. Percy Prince drove up in a car and stopped at a retail pump for gasoline. He went to the retail pump and was putting gasoline in Prince's car. While doing this, he saw gasoline coming out of the air vent on top of the storage tank in which gasoline was being pumped. At that time he did not see Taylor. He went to the electric switch on the pump which pumps gasoline into the storage tank and cut it off, and a fire started. His clothes caught fire. There was no raw gasoline on the ground around the switch at the time he cut it off. Taylor got in his tractor when he saw Pannell on fire, and drove his unit off without disconnecting the hose of the tank trailer leading to the storage tank, and it pulled in two. Gasoline continued to flow from the broken hose on the tank trailer, and it caught fire as it came out. The fire spread from the back of the tank trailer to the gasoline retail pumps, the store, and filling station. A considerable amount of plaintiffs' property was burned or damaged by the fire. Fire followed the tank trailer as Taylor drove it into the road. Taylor stopped his unit, jumped out, and stopped the gasoline from pouring out of the broken hose. Taylor disconnected the tractor and drove it away. The tank trailer was destroyed by fire.

A reasonable inference to be drawn from the evidence is that the gasoline overflowing from the storage tank was ignited by a spark created when Pannell cut off the electric switch on the pump which pumps gasoline in the storage tank.

We take judicial notice that gasoline is a flammable commodity. The basic duty to use ordinary or reasonable care under the circumstances requires a person handling an inherently dangerous instrumentality or commodity, like gasoline, to use care commensurate with the known exceptional danger. *Stegall v. Oil Co.*, 260 N.C. 459, 133 S.E. 2d 138; *Graham v. Gas Co.*, 231 N.C. 680, 58 S.E. 2d 757; *Rea v. Simowitz*, 225 N.C. 575, 35 S.E. 2d 871, 162 A.L.R. 999.

In the 1964 Cumulative Supplement, p. 100, to 24 Am. Jur., Gas and Oil, § 129, it is stated: "Clearly, it is negligence in one delivering fuel oil to overflow the receiving tank through inattention to the amount of fuel being delivered." In support of the text is cited the case of *J. J. Mayou Mfg. Co. v. Consumers Oil & Refining Co.*, 60 Wyo. 75, 146 P. 2d 738, 151 A.L.R. 1243. In this case defendant appealed from a judgment in favor of the plaintiff in an action for damages for the destruction of plaintiff's property by fire alleged to have been caused by defendant's negligence. The judgment was affirmed. The first headnote in this case published in A.L.R. correctly states the holding of the Court, and reads as follows:

> "The evidence is sufficient to support a finding of the jury that a seller's servant was guilty of negligence in delivering oil into the buyer's fuel tank causing the tank to overflow and setting fire to the buyer's plant, where it is shown that the servant, after he had started to pump the oil into the tank, left and went into the building to have the bill of lading receipted, although he did not know how much oil he had in the truck and had been warned not to overflow the fuel tank, and that the fuel tank was located partly over a drier operated at a high temperature, which became ignited when it came in contact with the overflow of the oil."

In its opinion, the Supreme Court of Wyoming said: "The testimony, accordingly, shows that the jury were justified in finding that the fire was caused by reason of the negligent acts of Millhouse in permitting the fuel tank to overflow."

In *Superior Oil Co. v. Richmond*, 172 Miss. 407, 159 So. 850, a judgment against the defendant Oil Company was affirmed. The facts are these: On the occasion in question, the railroad company placed a tank car, containing between seven and eight thousand gallons of gasoline, in the proper place on its spur track, near the storage tanks of the Superior Oil Company. An agent of the Oil Company in charge of its plant connected this tank car with one of its storage tanks by the metal pipe used therefor, for the purpose of transferring the gasoline to the storage tank. He turned the electric current on to the motor, thereby starting the motor, and then left the vicinity of the plant,

leaving no one there to attend to the pumping of the gasoline. While he was away, it was discovered by persons in the vicinity that the storage tank was overflowing, the gasoline running down the tank and on the ground. Stewart, who was at a nearby business plant, became aware of the situation, went to the pump house, and, at least the jury was warranted in so believing, turned the electric current off by means of the switch. Immediately thereafter Stewart was seen to leave the pump house with his clothing in flames, from the effects of which he soon died. Flames immediately appeared from burning gasoline on the transfer pipe and the ground between the pump and the storage tank. The fire chief failed to get the fire under control and called for assistance from bystanders, and went to a plant where Joe Richmond, an employee of the plant, was working, and requested the foreman to have his employees assist in fighting the fire, and the foreman told his employees that they could help. Richmond, while holding one of the hose which was playing water on the storage tank, was killed when it exploded. The Court held that the Oil Company's negligence in permitting the storage tank to overflow was not superseded by the act of a third person who turned off the electric switch connected with the motor that operated the storage pump, thereby producing electric sparks that caused the fire that resulted in Richmond's death, where the turning off of the switch was a normal response to the situation created by the Oil Company's negligence, and there was no proof that it was negligently done. The Court in its opinion said:

> "The ground on which the Superior Oil Company says it was entitled to a directed verdict is that the negligence of its servant in permitting the storage tank to overflow was superseded, and therefore was not a proximate cause of Richmond's death, first, by the intervening act of Stewart in turning off the electric current, and, second, by the act of Richmond himself in unnecessarily and recklessly exposing himself to the danger of the tank's explosion. * * *

> "An intervening force which combines with the negligence of another in producing injury to a third person does not necessarily supersede the original act of negligence and become the sole proximate cause of harm produced thereby. Op. cit., 2 Restatement, Torts, § 441; *Cumberland Telephone Co. v. Woodham,* 99 Miss. 318, 54 So. 890. It does not become such a cause if it 'is a normal response to a situation created by the' negligence of another 'and the manner in which it is done is not extraordinarily negligent.' 2 Restatement, Torts, § 447. When the storage tank began to overflow and to discharge gasoline, a highly inflammable substance,

and no employee of the Superior Oil Company was present to
stop it, the normal things for another to do, when he saw it, was
to stop it himself, and, in doing so, he would be merely discharg-
ing a duty resting on the Superior Oil Company. 45 C.J. 933. It
does not appear that Stewart was guilty of any negligence in the
manner in which he stopped the flow of the gasoline; the turning
off and on of an electric switch is a very simple act which any
normal person could do. Stewart's act in turning off the electric
switch, therefore, did not supersede the negligence of the Superior
Oil Company's servant in permitting the storage tank to over-
flow."

The discussion of the Court as to Richmond's conduct is not relevant
here.

In *Nolan v. Haskett,* 186 Ark. 455, 53 S.W. 2d 996, a judgment for
damages recovered against appellants for the negligent destruction of
appellee's premises by fire was upheld. The Court held that the jury
was warranted in finding that negligence of the defendant, who, in
delivering gasoline by tank truck to plaintiff's filling station, left the
truck unattended and with gasoline flowing therefrom to the under-
ground tank, coupled with the act of a third person in throwing a
match near the place, was the proximate cause of the destruction of
plaintiff's premises, and was justified in finding that plaintiff was not
contributorily negligent in jerking the hose from the intake pipe lead-
ing to the underground tank, although thereby gasoline was spread and
the fire increased, the fact being that plaintiff was confronted with
an emergency and had reason to believe that defendant had reached
the truck and had shut off the flow of gasoline.

When Dewey Moore Pannell — one of plaintiffs — saw the storage
tank overflowing with gasoline, considering plaintiffs' evidence in the
light most favorable to them, he had reasonable grounds to apprehend,
considering the very large amount of gasoline in tanks on the premises
and in defendants' tank trailer, that there was danger of fire or an
explosion from the overflowing gasoline presently threatening plain-
tiffs' property and the lives of people on the premises. Under such cir-
cumstances, his simple act in cutting off the electric switch in a box on
the pump pumping gasoline into the storage tank, so as to stop the
flow of gasoline therein and to remove the present threat to plaintiffs'
property and the lives of persons on the premises, does not constitute
contributory negligence as a matter of law, even if it was negligence
at all. *McKay v. R. R.,* 160 N.C. 260, 75 S.E. 1081; *Pegram v. R. R.,*
139 N.C. 303, 51 S.E. 975; *Burnett v. R. R.,* 132 N.C. 261, 43 S.E. 797.
"[A]ll of the authorities, here and elsewhere, are to the effect that it is

MOORE *v.* BEARD-LANEY, INC.

both the right and duty of an owner to make every reasonable endeavor to save his property from destruction, and that in passing upon his conduct full allowance shall be made for the natural impulse prompting the effort and for the emergency under which he acts." *McKay v. R. R., supra.*

The original negligence of one party cannot be insulated by the negligence of another so long as the original negligence plays a substantial and proximate part in the injury or loss, or so long as the intervening act and resultant injury could have been reasonably foreseen and expected by the author of the original negligence. The question of intervening negligence is ordinarily for the determination of the jury. *Davis v. Jessup,* 257 N.C. 215, 125 S.E. 2d 440; *Watters v. Parrish,* 252 N.C. 787, 115 S.E. 2d 1; *Bryant v. Woodlief,* 252 N.C. 488, 114 S.E. 2d 241, 81 A.L.R. 2d 239; *Shepard v. Mfg. Co.,* 251 N.C. 751, 112 S.E. 2d 380; *Henderson v. Powell,* 221 N.C. 239, 19 S.E. 2d 876; *Harton v. Telephone Co.,* 141 N.C. 455, 54 S.E. 299.

A jury could find from the evidence that defendants delivering a large amount of gasoline into a storage tank of plaintiffs were guilty of negligence in permitting the receiving tank to overflow through inattention by the corporate defendant's driver Taylor to the amount of gasoline being delivered therein, that Dewey Moore Pannell saw the overflow of gasoline and cut off the electric switch in a box on the pump pumping gasoline into the overflowing storage tank so as to remove a present threat to plaintiffs' property and to persons on the premises from fire or explosion from the overflowing gasoline, that when the electric switch was cut off a spark was created, which ignited the overflowing gasoline, that in cutting off the electric switch Pannell was not guilty of negligence, and that in doing so his act did not insulate the original negligence of defendants, in that defendants' original negligence played a substantial and proximate part in plaintiffs' damage, and further, in that defendants could have reasonably foreseen and expected under the circumstances Pannell's act and resultant damage to plaintiffs' property.

The judgment of compulsory nonsuit is

Reversed.