BOLEY RODGERS, ADMINISTRATOR OF THE ESTATE OF SHIRLEY FAYE ROD-GERS, DECEASED v. JAMES MONROE CARTER AND SOPHIA BEACHAM JACKSON.

(Filed 2 March, 1966.)

**1. Automobiles § 19—**

The doctrine of sudden emergency holds a person confronted with a sudden emergency to the course of conduct which a reasonably prudent person so confronted would pursue, rather than holding him to the wisest choice of conduct in such situation.

**2. Automobiles § 34—**

The care which a motorist must exercise when he sees or should see children on or near the highway is the care of the reasonably prudent man, but the degree of care varies with the factual situation confronting the motorist, including variations in the age of the child, whether it is attended, whether the child darts out from a place of concealment, etc.

**3. Same—**

The presence of a very young child on the shoulder of a highway is, in itself, a danger signal to the oncoming motorist, who must thereupon take such precautions as are reasonable under all the circumstances.

**4. Automobiles §§ 41m, 46— Doctrine of sudden emergency held not raised by the evidence, and instruction thereon was error.**

Where the driver's own evidence discloses that two six-year old girls were standing for some three minutes eight feet from the hard-surface, that the road was straight and unobstructed for seven-tenths of a mile, that the driver did not see the children until he was approximately 250 feet from them, at which time he observed intestate standing with her back to him, that he did not sound his horn or reduce speed, and that when intestate suddenly turned and ran across the highway he immediately applied his brakes and did everything possible to avoid the accident, *held*, the evidence does not present the doctrine of sudden emergency since the fact that defendant acted with due care after being confronted

with the emergency would not absolve him from his prior negligence if it constituted a proximate cause of the accident, and therefore it was error for the court to charge the jury upon the doctrine of sudden emergency.

**5. Automobiles § 41m—**

The act of a six-year old child in suddenly running onto the highway in front of a motorist's car does not insulate the prior negligence of the motorist in failing to sound his horn and reduce his speed when he saw or should have seen the child near the hard-surface, since such motorist is charged with the duty of anticipating that a six-year old child may suddenly dart into the path of an oncoming vehicle, and an intervening act cannot break the chain of causation when it is reasonably foreseeable.

MOORE, J., not sitting.

BOBBITT, J., concurring in result.

SHARP, J., and RODMAN, E.J., join in concurring opinion.

APPEAL by plaintiff from *Parker, J.,* 2 December 1965 Session of MARTIN.

This is an action for the wrongful death of a six year old child struck by the automobile of the defendant Jackson, driven by the defendant Carter, while the child was attempting to cross U. S. Highway 17, approximately a mile north of Washington, North Carolina.

The complaint alleges that Carter was driving the automobile through a thickly settled rural community at a speed greater than was reasonable under the circumstances, and was not keeping a proper lookout. It is alleged that he failed to blow his horn or give other warning or reduce the speed of the automobile as it approached the deceased child and her companion, also six years of age. It is alleged that the defendant Jackson was riding in the automobile at the time of the accident.

The answer admits that the automobile struck the child and that she died as the result of the collision but denies that Carter was negligent. It alleges that he saw the two children standing on the side of the highway to his right and that when the automobile was only one or two car lengths from her the deceased child suddenly and without warning attempted to run across the highway directly in the path of the automobile, whereupon Carter immediately applied his brakes, which were in good condition, but was unable to stop or otherwise avoid striking her.

The jury found that the child was not killed by the negligence of the defendants. From a judgment upon the verdict in favor of the defendants the plaintiff appeals, assigning as error portions of

the charge with reference to sudden emergency and with reference to the burden of proving negligence.

The plaintiff offered evidence which, if true, would tend to show: The little girl was attending kindergarten and was of normal intelligence and activity. She lived with her grandfather and, with her little companion, had been to the tobacco barn where he was curing tobacco. He went into the barn to inspect the tobacco and while he was so engaged the children left. To reach the highway from the barn it was necessary for them to go through a large white gate approximately 30 feet from the highway. This gate was found closed and fastened when the grandfather, having heard the sound of the collision, went to see what had happened. The grandfather, who was about 75 yards away, did not hear any horn blow. The accident occurred at approximately 7:10 p.m. on 10 July 1965. The automobile left skid marks on the highway beginning 75 feet before reaching the point of impact and continuing 45 feet further to the point where it came to a stop. There was a dent on the left side of the hood. The immediate area is not thickly settled. The automobile was proceeding northward at approximately 50 to 55 miles per hour, the highway being straight for seven-tenths of a mile south of the point of impact. The speed limit was 60 miles per hour. The road was concrete and in good condition. The weather was good and there was nothing to obstruct the driver's view. The child was crossing from east to west; that is, from the driver's right to his left. The pavement was 24 feet in width. The point of impact was in the northbound lane. The defendant Carter told the investigating patrolman that when he first saw the child she was running; he was approximately 100 feet from her and immediately applied his brakes. The other child remained standing on the side of the road. The patrolman found no mechanical defects in the automobile. The defendants' view of the gate would be obstructed by the growth of grass and weeds on the shoulder of the highway in the opinion of the patrolman.

Carter testified that he observed the two little girls standing 8 to 10 feet off the highway on the east side thereof when he was approximately 200 or 250 feet from them. He was then driving approximately 55 miles per hour. The girls appeared to be aware of the presence of the vehicle. He further testified that the child who was killed was then standing with her back to him facing northeast. She then turned and ran across the highway. He immediately applied his brakes, which were in good working order, and turned to the left but struck the child. He had no notice that the child intended to run out into the highway. He did not sound his horn and did not apply his brakes or slow down until he saw the child run

into the highway. He was paying attention to his driving and does not know why he did not see the children before he reached a point 250 feet from them unless it was the background of grass beyond the driveway leading to the gate.

Willie Boyd, called as a witness by the defendants, testified that he observed the accident while driving toward it from the opposite direction. He observed the children standing about 8 feet from the pavement. They had been standing there when he passed going north and were still there, three or four minutes later, after he had turned around and headed back in a southward direction.

*R. L. Coburn for plaintiff.*
*Rodman & Rodman for defendants.*

LAKE, J. Upon the issue of negligence, which the jury answered in favor of the defendants, the trial judge instructed the jury:

"Now the defendant relies upon what we know in law as the doctrine of sudden emergency and the court instructs you that this sudden emergency is that he was confronted with something out of the ordinary suddenly and the court instructs you that a person confronted with a sudden emergency is not held to the same degree of care as in ordinary circumstances but only to that degree of care which an ordinarily prudent person would use under similar circumstances.

"The standard of conduct required in an emergency, as elsewhere, is that of the prudent person. The Court further instructs you that this principle is not available to one who by his own negligence has brought about or contributed to the emergency. That means in simple language, that a person who creates the emergency or who contributes to the creation of the emergency cannot take advantage of this doctrine of sudden emergency.

"The Court instructs you that one who is required to act in an emergency is not held by the law to the wisest choice of conduct but only to such choice as a person of ordinary care and prudence similarly situated would have made."

The court then reviewed the contentions of the parties with reference to the existence of a sudden emergency.

The question now to be considered is as to whether the evidence was such as to justify any instruction upon this doctrine of sudden emergency. We conclude that it was not and that the injection of the doctrine into the charge was prejudicial to the plaintiff.

RODGERS v. CARTER.

The doctrine of sudden emergency is simply that one confronted with an emergency is not liable for an injury resulting from his acting as a reasonable man might act in such an emergency. If he does so, he is not liable for failure to follow a course which calm, detached reflection at a later date would recognize to have been a wiser choice. As Cardozo, J., said of one acting in such a situation, in *Wagner v. International Ry. Co.*, 232 N.Y. 176, 182, 133 N.E. 437, 438:

> " 'Errors of judgment,' however, would not count against him, if they resulted 'from the excitement and confusion of the moment.' [Citations.] The reason that was exacted of him was not the reason of the morrow. It was reason fitted and proportioned to the time and the event."

That one was faced with an emergency before the injury occurred does not, however, necessarily shield him from liability. He must still act, after being confronted with the emergency, as a reasonable person so confronted would then act. The emergency is merely a fact to be taken into account in determining whether he has acted as a reasonable man so situated would have done. The extent to which it will excuse a departure from the care and judgment which would be required under normal circumstances will, therefore, vary with the suddenness with which the emergency developed, the seriousness of the threatened damage and other circumstances calculated to excite and confuse. The doctrine of sudden emergency, moreover, relates solely to the appraisal of conduct occurring after the emergency is observed. An emergency does not necessarily break the chain of causation so as to absolve one from liability for prior negligent conduct.

The rule is well summarized in the American Law Institute's Restatement of the Law of Torts, 2d Ed., § 296, where it is said:

> "(1)  In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency which requires rapid decision is a factor in determining the reasonable character of his choice of action.

> "(2)  The fact that the actor is not negligent after the emergency has arisen does not preclude his liability for his tortious conduct which has produced the emergency.

> \*    \*    \*

> "Where the emergency itself has been created by the actor's own negligence or other tortious conduct, the fact that he has then behaved in a manner entirely reasonable in the light of the situation with which he is confronted does not insulate

his liability for his prior conduct. Such liability is not precluded by the fact that he has acted reasonably in the crisis which he has himself brought about. It is not his reasonable conduct in the emergency which makes him liable, but his prior tortious conduct creating the emergency."

In *Brunson v. Gainey*, 245 N.C. 152, 95 S.E. 2d 514, the trial court charged the jury on the doctrine of sudden emergency in an action for wrongful death of a three year old child killed while running across the road in front of the defendant's car. A new trial was granted, this Court saying through Rodman, J.:

"One cannot, by his negligent conduct, permit an emergency to arise and then excuse himself on the ground that he was called upon to act in an emergency.

*          *          *

"If the peril suddenly confronting the defendant was due to excessive speed or to his failure to maintain a proper lookout, the fact that care was exercised after the discovery of the peril would not excuse the negligent conduct which was the proximate cause of the injury and damage. The court should so have instructed the jury."

In Harper & James, the Law of Torts, § 16.11, there is the following statement concerning the doctrine of sudden emergency:

"This rule will be applied even where the actor has put himself in the emergency because of some prior negligence; but in this connection one thing should be noted: the exercise of due care in an emergency will not insulate an actor from liability for the consequences of the negligence that helped to bring the emergency about. Thus even though a motorist driving at excessive speed does everything that could be done to avoid striking the child who darts out into his path, these precautions taken in the emergency (while constituting due care) will not excuse the driver from liability for the excessive speed."

The defendant's own evidence is that these two little six year old girls were standing for three or four minutes some eight feet from the pavement. Though the road was straight and his vision unobstructed for seven-tenths of a mile, Carter did not see the children until he was approximately 250 feet from them, at which time he observed the child now deceased standing with her back to him. The other child was facing him. He was then driving 55 miles per hour. He did not blow his horn and did not reduce his speed until he saw

the child run into the road, at which time he applied his brakes and tried to avoid her by turning to his left.

After the child ran into the road Carter could not have turned to his right, so as to pass behind the running child, without endangering her companion who remained on the shoulder of the road. The skid marks left by his tires indicate that he applied his brakes as soon as the child went upon the road. Thus, it cannot be said that Carter failed to act as a reasonable man would have done after the emergency arose or became acute, but the plaintiff's case does not rest upon any such contention. The plaintiff's contention is that Carter was negligent before the child ran upon the road and that this negligence continued in its causal effect, with no break in the chain of causation by an intervening, unforeseeable event.

The cases in our reports involving small children struck by automobiles upon the streets and highways are as varied in their factual situations as are the impulses and instantaneous reactions of children. Consequently, they vary in ultimate results. While the principles of law, concerning the care required of a motorist who sees, or ought to see, a small child on or near the highway, are constant, their application is difficult because the facts vary from case to case. Precautions which reasonable care demands of a motorist driving at 55 miles per hour toward a six year old child standing upon the shoulder of the road with her back to the approaching automobile, may be more than is reasonable to require of a motorist driving 40 miles per hour toward a twelve year old child standing on the shoulder and looking in the motorist's direction. When the small child is accompanied by and is apparently in the care of one much older, the situation confronting the motorist is substantially different from that which confronts him when two very young children are alone in or near the road. See *Brewer v. Green,* 254 N.C. 615, 119 S.E. 2d 610. A still different situation is presented by the child who darts out from a place of concealment, such as one who runs from behind another vehicle into the path of a motorist. See *Brinson v. Mabry,* 251 N.C. 435, 111 S.E. 2d 540.

The presence of a very young child on the shoulder of a highway is, in itself, a danger signal to the oncoming motorist, who must thereupon take such precautions as are reasonable under all of the circumstances. See *Price v. Burton,* 155 Va. 229, 154 S.E. 499; *Walker v. Jarnevich* (La. App.) 102 So. 2d 770; *Paschka v. Carsten,* 231 Iowa 1185, 3 N.W. 2d 542; Shearman & Redfield, Negligence, § 24, Supplement; 7 Am. Jur. 2d, Automobiles & Highway Traffic, §§ 441, 449, 450. It is ordinarily a question for the jury as to whether the motorist has responded to such danger signal as a reasonable man confronted with such a signal would have done. The

rule by which the jury should be guided in its deliberation is thus stated by Sharp, J. in *Wainwright v. Miller,* 259 N.C. 379, 130 S.E. 2d 652:

> "The duty the law imposes upon a motorist who sees, or by the exercise of reasonable care should see, children on or near the highway has been frequently declared by this Court. He must recognize that children have less discretion than adults and may run out into the street in front of his approaching automobile unmindful of the danger. Therefore, proper care requires a motorist to maintain a vigilant lookout, to give a timely warning of his approach, and to drive at such speed and in such a manner that he can control his vehicle if a child, in obedience to a childish impulse, attempts to cross the street in front of his approaching automobile."

The learned judge who presided at the trial of this action so instructed the jury, but he added to these instructions the above quoted remarks concerning the doctrine of sudden emergency, which were not applicable in view of the evidence presented and could well have confused the jury as to the principle by which they were to be guided in reaching their verdict. For recent decisions of this Court to the effect that the doctrine of sudden emergency has no application to a situation such as is presented upon the present record, see: *Boykin v. Bissette,* 260 N.C. 295, 132 S.E. 2d 616; *Ennis v. Dupree,* 258 N.C. 141, 128 S.E. 2d 231; *Rodgers v. Thompson,* 256 N.C. 265, 123 S.E. 2d 785.

Since the child was only six years of age, her running into the road could not be deemed contributory negligence and is not pleaded as such by the defendant. Neither could it be an intervening act which would break the chain of causation so as to relieve the defendant from liability for his prior negligence, if any. The act of another, intervening between the negligence of a defendant and the injury, does not break the chain of causation if such act could reasonably have been anticipated by the defendant. *Moore v. Beard-Laney, Inc.,* 263 N.C. 601, 139 S.E. 2d 879; *Riddle v. Artis,* 243 N.C. 668, 91 S.E. 2d 894; *Beach v. Patton,* 208 N.C. 134, 179 S.E. 446; *Harton v. Tel. Co.,* 141 N.C. 455, 54 S.E. 299. It is precisely because one may reasonably foresee and anticipate that a six year old child standing on the shoulder of a highway may suddenly dart into the path of an oncoming vehicle that the law imposes upon the driver the above mentioned duty of vigilance, warning and control of his vehicle.

New trial.

MOORE, J., not sitting.

BOBBITT, J., concurring in result: As I understand it, the Court holds *no* instruction as to sudden emergency should have been given because defendants' evidence discloses *as a matter of law* that their negligence was a proximate cause of the sudden emergency. If this be true, plaintiff would be entitled to a peremptory instruction in his favor on the negligence issue. In my opinion, whether defendants' negligence was a proximate cause of the sudden emergency should be submitted to and determined by the jury. In this respect, I dissent from the views expressed in the Court's opinion.

Since I am of the opinion the instructions given as to sudden emergency did not sufficiently apply the law to the facts in evidence, I vote for a new trial *on that ground.*

SHARP, J., and RODMAN, E.J., join in concurring opinion.