BARBARA JEAN FOY v. THOMAS EDWARD BREMSON, GROVER
C. BISSETTE AND LESTER GODWIN

No. 90

(Filed 26 November 1974)

1. **Automobiles § 72; Negligence § 4— sudden emergency — defendant's
   negligence as proximate cause**

   One cannot escape liability for acts otherwise negligent because
   done under the stress of an emergency if such emergency was caused,
   wholly or in material part, by his own negligence or wrongful act.

2. **Automobiles § 72; Negligence § 4— sudden emergency — negligence as
   cause — absence of negligence after emergency**

   The fact that the actor is not negligent after the emergency has
   arisen does not preclude his liability for his tortious conduct which has
   produced the emergency.

3. **Automobiles § 72— sudden emergency — defendant's negligence as con-
   tributing cause**

   In an action to recover damages for personal injuries sustained
   when plaintiff was struck by defendant's automobile at night after
   it had collided with a chain between two trucks, plaintiff's evidence
   was sufficient to permit a jury finding that negligence on the part
   of defendant was one of the proximate causes of the emergency with
   which he was confronted immediately prior to the collision where it
   tended to show that a truck with its rear wheel lodged in a ditch and
   its back parallel to the highway was to the right of the southbound
   lane in which defendant was traveling, that its headlights were shin-
   ing across a field and its taillights and "markers" were burning, that
   a second truck was parked in the northbound lane with its headlights
   on dim shining north and with five yellow lights on the cab and a
   flasher light on each fender burning, that a log chain was connected to
   both trucks and was stretched across the southbound lane, and that a
   person on or near the highway north of the trucks attempted to warn
   defendant by means of a flashlight that he was approaching a zone
   of danger, but that the defendant failed to decrease his speed before
   striking the chain.

4. **Automobiles § 90— instructions — sudden emergency — defendant's
   negligence as contributing cause**

   The trial court's charge on sudden emergency was erroneous in
   failing to instruct the jury that the sudden emergency rule would not
   be available to defendant in the event his prior negligence contributed
   to the creation of the emergency as a proximate cause thereof.

5. **Automobiles § 90; Negligence § 42— sudden emergency — instructions
   — burden of proof**

   The trial court erred in placing upon defendant the burden of
   establishing by the greater weight of the evidence that he was con-
   fronted by a sudden emergency.

ON *certiorari*, granted on petition of defendant Bremson, to review the decision of the Court of Appeals reported in 20 N.C. App. 440, 201 S.E. 2d 708, docketed and argued as No. 70 at Spring Term 1974.

Plaintiff's action is to recover damages for personal injuries she sustained on the night of 26 November 1971 when struck by an automobile. She alleged her injuries were proximately caused by the joint and concurrent negligence of defendants Bremson, Bissette and Godwin. Defendants Bissette and Godwin filed a joint answer in which they denied negligence, pleaded contributory negligence, and conditionally alleged a cross-claim against defendant Bremson for contribution. In his answer to the complaint, defendant Bremson denied negligence and pleaded contributory negligence. In his separate answer to the cross-claim of defendants Bissette and Godwin for contribution, defendant Bremson denied negligence on his part; and, in the same pleading, alleged a cross-claim against defendants Bissette and Godwin for damages on account of personal injuries and property damage he sustained on account of their actionable negligence.

All of these actions arose out of a three-vehicle collision that occurred at or about 11:30 p.m. on the night of 26 November 1971 on N. C. Highway No. 222 about eight (8) miles northwest (referred to hereafter as north) of the town of Kenly. The collision involved a 1967 Ford grain truck owned by defendant Godwin; a 1968 Chevrolet grain truck also owned by defendant Godwin; and a 1968 Chevrolet automobile owned and operated by defendant Bremson.

The evidence *offered by plaintiff* as to what occurred prior to and at the time of the collision consists of her testimony, the testimony of defendants Bissette and Godwin, and the testimony of Donnie Lee Boykin. *Uncontroverted* testimony of these witnesses tends to show the facts narrated below.

At or about 10:30 p.m. on the night of 26 November 1971 defendants Bissette and Godwin and plaintiff (a divorcee who lived with Bissette and served as his housekeeper-cook and who also occasionally worked for Godwin) started out in two trucks, a *pickup* truck driven by Bissette and a 1967 Ford grain truck operated by Godwin, to pick up some corn grain Bissette had harvested and left with Godwin's combine in an open field adjacent to N. C. Highway No. 222 between Middlesex and

Kenly. This open field was to the west of No. 222 and was accessible only by means of a narrow, angular driveway. The entrance to the driveway crossed a drainage ditch by means of a covered drainpipe. The right rear wheel of the Ford grain truck fell into the ditch and became lodged therein when Godwin was attempting to make a *right* turn from No. 222 into the entrance to the field. Unable to free the vehicle by means of its own power, Bissette and Godwin attached a chain to the truck and to the combine and tried to "frontally" pull the truck out of the ditch and into the open field. This procedure failed to dislodge the truck. Thereupon, Godwin instructed Bissette to take the *pickup* truck and to return to Godwin's nearby home in order to get Godwin's 1968 Chevrolet grain truck. Bissette carried out Godwin's instructions. Upon his return Bissette parked the Chevrolet grain truck on No. 222 headed north toward Middlesex and directly opposite the driveway where the Ford truck was stuck.

After Bissette's return with the Chevrolet truck, Bissette, Godwin and Boykin began the process of attaching a twenty-foot "log chain" to the Ford truck. After it had been fastened to the Ford truck, the log chain was stretched across the adjacent portion of the highway to be attached to the Chevrolet truck.

Bissette then took the end of the log chain and began the process of hooking it to the Chevrolet truck. Plaintiff held a large lantern-type flashlight for Bissette while he crawled under the Chevrolet truck to attach the chain. After Bissette attached the chain, plaintiff began walking down the road south toward Kenly to signal any vehicles that might approach the scene from that direction. Approximately one hour had elapsed from the time the Ford truck had become stuck in the ditch. Bremson's passenger car did not appear until after the log chain had been attached to both trucks.

The evidence offered by plaintiff included testimony tending to show the following:

The back of the Ford truck was "straight parallel with the highway." The headlights on the Ford truck were "shining across the field." The "taillights" and "markers" on the Ford truck were burning. Boykin testified that he could see the lights "on the Ford truck in the ditch" when standing "several hundred feet down the road toward Middlesex."

Godwin's home was north (toward Middlesex) from the scene of collision. When returning with the Chevrolet grain truck, Bissette drove south, beyond the Ford truck, turned around and then headed north toward Middlesex. Bissette stopped opposite the Ford truck, parking the Chevrolet entirely on its right side of No. 222. The headlights (driving lights) of the Chevrolet were on dim. Five yellow clearance lights, on top of the cab, were burning. Four yellow "emergency flasher lights" were "blinking," one on the top of each fender.

The log chain had been fastened to both vehicles and was stretched across the lane for southbound traffic prior to the collision. Its highest point above the pavement was approximately three feet at the Chevrolet and from eighteen inches to two feet at the Ford. The middle of the chain "was almost to the highway or lying on the highway." The Bremson car "did break the log chain."

Prior to the collision, Bissette had "let the chain down" for three southbound cars to pass "on their side of the road." Boykin had proceeded north toward Middlesex to flag down southbound traffic. He had reached a point variously estimated from a minimum of seventy-five to a maximum of several hundred feet. He had a Sylvania safety cell flashlight equipped with a red blinker device to effectuate such warning. When first observed, the Bremson car was approximately one-half mile up the road traveling south from Middlesex toward Kenly. Boykin was in the middle of the road, waving the light. It did not appear to Boykin that any effort was being made to slow down or stop the Bremson car. Boykin got out of the road and hollered to the others to get out of the road. It appeared to Godwin that the Bremson car first slowed down and later came on faster.

After the collision, the Bremson car was stopped about "one or two car lengths in the Kenly direction" from the Ford truck. Plaintiff was "about two car lengths further down toward Kenly with reference to the Bremson car." Plaintiff testified that she was "approximately ten to twelve feet from the Ford vehicle at the time this happened."

Having testified when called as witnesses for plaintiff, defendants Bissette and Godwin did not offer evidence. The evidence offered by defendant Bremson consisted primarily of his own testimony which, in the material respects set forth below,

was in conflict with evidence offered by plaintiff and tended to show the following:

Although a Raleigh resident, he had traveled this particular stretch of No. 222 on previous occasions. When traveling south on this segment of No. 222 he saw a vehicle facing him with its "bright lights on" apparently in the lane for northbound traffic. These lights began to bother him when he "was four or five hundred feet back down toward Middlesex." He then slowed down to "between thirty-five and forty" miles per hour and continued at that speed. He could not recall having seen "any other lights around besides the headlights." He could not tell that the lighted vehicle he was approaching was a truck until "he was right on top of it, pretty close to it." When almost opposite the truck, he was able to observe for the first time that the left tire was across the center line in his lane of travel. To avoid colliding with it he swerved to the right. All of a sudden, at this point, he was able to see the true situation there, that is, the Ford truck in the ditch and the people thereabouts, at which time he put on his brakes. However, by this time it was too late to avoid a collision and he collided with both trucks and thereafter struck plaintiff.

He did not see anybody in the road or adjacent thereto with a flashlight or any other type of warning device at any time prior to the collision.

When the collision occurred, plaintiff was on the paved portion of the highway, somewhere between and to the rear (south) of the two Godwin trucks, with her back toward the oncoming Bremson vehicle. Following the collision, the Bremson car came to rest approximately five to ten feet past the point where the two Godwin trucks were located. Plaintiff was lying on the right side of the paved portion of the highway in the direction of Kenly approximately two car lengths from Bremson's vehicle.

The investigating highway patrolman, a witness offered by plaintiff, testified that there was no physical evidence at the scene that would indicate that Bremson had applied his brakes in an effort to avoid the collision. The patrolman testified as follows: "There were vehicles at the scene when I arrived. There was a 1969 [sic] Ford truck in the, partially in the, driveway where I have marked private drive. There was a 1968 Chevrolet approximately in the middle of the road, headed, the front of the 1968 Chevrolet was headed, toward Middlesex, and, about in the

middle of the road. The 1969 [sic] Ford truck was partially in the road. The back overhang of the truck was approximately eighteen inches to two foot on the road, on the traveled portion of the road." He further testified that he "found the right rear wheel of the [Ford] truck in the ditch."

All motions for directed verdicts having been denied, the issues submitted, and the jury's answers are as follows:

"1. Was the plaintiff injured and damaged by the negligence of the defendant, Bremson?

"ANSWER: No

"2. Was the plaintiff injured and damaged by the negligence of the defendant, Bissette?

"ANSWER: Yes

"3. Was the defendant, Bissette, at the time of the collision acting as the agent of the defendant, Godwin?

"ANSWER: Yes

"4. Was the plaintiff injured and damaged by the negligence of the defendant, Godwin?

"ANSWER: Yes

"5. Did the plaintiff, by her own negligence, contribute to her injuries and damages?

"ANSWER: No

"6. What amount of damages, if any, is the plaintiff entitled to recover?

"ANSWER: $100,000.00

"7. Was the defendant, Bremson, injured and damaged by the negligence of the defendant, Bissette?

"ANSWER: Yes

"8. Was the defendant, Bremson, injured and damaged by the negligence of the defendant, Godwin?

"ANSWER: Yes

"9. Did the defendant, Bremson, by his own negligence contribute to his injuries and damages?

"ANSWER: No

"10. What amount of damages, if any, is the defendant, Bremson, entitled to recover?

"(a) For personal injury?

ANSWER: $2,500.00

"(b) for property damage?

ANSWER: $1,500.00."

Upon return of the verdict, defendants Bissette and Godwin, pursuant to G.S. 1A-1, Rule 50(b), moved to set the verdict aside and for judgments notwithstanding the verdict. These motions were denied. Thereafter these defendants, pursuant to Rule 59, moved for a new trial. These motions were also denied.

Plaintiff also moved for a new trial pursuant to Rule 59 in her action against defendant Bremson. This motion was denied. Plaintiff then gave notice of her election to appeal the decision as it related to her claim for relief against defendant Bremson.

Defendants Godwin and Bissette also appealed, alleging the trial court had committed reversible error in failing to grant their motions for directed verdicts as against plaintiff's claim and as against defendant Bremson's cross-claim; in erroneously charging or in failing to charge the jury as to which party had the burden of proof on each issue submitted; and in permitting the introduction of substantial amounts of incompetent evidence.

The Court of Appeals ordered a new trial *on all issues* on the specific ground that "[t]he trial court failed to give instructions as to the burden of proof on any of the issues."

Defendant Bremson then petitioned this Court for a writ of *certiorari* which was granted on 5 March 1974. None of the other parties to this action have petitioned this Court for review of the decision below.

*Teague, Johnson, Patterson, Dilthey & Clay by Robert M. Clay and Dan M. Hartzog for defendant appellant Bremson.*

*Narron, Holdford, Babb & Harrison by William H. Holdford for plaintiff appellee.*

*Battle, Winslow, Scott & Wiley by Robert L. Spencer for defendant appellees Bissette and Godwin.*

Foy v. Bremson

BOBBITT, Chief Justice.

In her appeal to the Court of Appeals, plaintiff set forth *one* assignment of error, to wit: "The court erred in its charge on Issue No. 1 as to the DOCTRINE OF SUDDEN emergency for that it failed to charge that the sudden emergency doctrine would not be available to defendant Bremson if they should find that by his own negligence, he brought about or *contributed to the emergency*." (Our italics.)

The Court of Appeals did not discuss this assignment. It awarded a new trial on *all* issues for error in the court's instructions relating to burden of proof.

In our opinion, the court's instructions with reference to Issue No. 1 properly and sufficiently placed upon plaintiff the burden of satisfying the jury by the greater weight of the evidence that negligence on the part of Bremson was a proximate cause of her injuries. However, any failure to place this burden on plaintiff would not be prejudicial to her. She did not assign as error, nor does she contend, that there was error in the court's charge with reference to *burden of proof* in respect of Issue No. 1.

The jury having answered the first issue "No," this ended plaintiff's case against Bremson in the absence of reversible error in respect of the court's instruction on the first issue with reference to the rule applicable under circumstances when a motorist is confronted by a sudden emergency. Therefore, the only question before this Court is that presented by defendant Bremson's petition for *certiorari,* namely, whether plaintiff is entitled to a new trial against defendant Bremson on account of the portion of the charge she assigned as error.

Under the decision of the Court of Appeals there must be a new trial of all issues arising on the pleadings as between plaintiff and defendants Bissette and Godwin, and on the alleged cross-claim of defendants Bissette and Godwin against defendant Bremson *for contribution,* and in respect of the alleged cross-claim of defendant Bremson against defendants Bissette and Godwin for damages on account of personal injuries and property damage sustained by him.

Plaintiff's assignment of error is based on her exception (No. 52) to the following portion of the court's charge:

"(In going back to the first issue, there's something I should have charged you as to the defendant Bremson, which I

will charge you now. The defendant is relying—that is, back to the first issue, 'Was the plaintiff injured and damaged by the negligence of the defendant, Bremson?' The defendant Bremson is relying on what is sometimes called the doctrine of a sudden emergency. That is, that that is a part of the theory of negligence as to what a reasonable and prudent man would do, but specifically the law does not require a man who is confronted with a sudden emergency to exercise any more than the care that an ordinary and prudent person would exercise in a situation. So, you mustn't look here in the cold light of reason as we might do it here in the courtroom, but you must look, put yourself as reasonable men in the shoes of the defendant Bremson on the highway at that time. So, that if you find that *he hadn't brought on* this accident by his own negligence, if he was suddenly confronted with an emergency, his duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation. If at that moment his choice and manner of action might have been followed by an ordinarily prudent person under the same conditions, he does all that the law requires of him, although in the light of after events, it appears that some different action would have been better and safer.

"So, I do instruct you there as to the doctrine of sudden emergency. You wouldn't judge the defendant Bremson in the light as we might do it in the cool thought sitting here in the courtroom, but judge him as you would judge a reasonable man to act who was confronted with a sudden emergency, if you're satisfied by the greater weight of the evidence that he was confronted by a sudden emergency.)" (Our italics.)

In his original charge on the first issue, the court gave no instruction with reference to the rule applicable under circumstances when a motorist is confronted by a sudden emergency. The quoted instruction was given immediately after completion of the court's instructions with reference to the *fourth* issue and immediately preceding the court's instructions with reference to the *fifth* issue. It was not applied or considered with reference to any specific factual situation.

"[A]n automobile driver who, by the negligence of another and not by his own negligence, is suddenly placed in an emergency and compelled to act instantly to avoid a collision or injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he made neither the wisest choice nor the

one that would have been required in the exercise of ordinary care except for the emergency." 57 Am. Jur. 2d, Negligence § 91 (1971). *See also,* 7 Am. Jur. 2d, Automobiles and Highway Traffic §§ 359, 360 (1963); 60A C.J.S., Motor Vehicles § 257 (1965). *Accord, Brunson v. Gainey,* 245 N.C. 152, 157, 95 S.E. 2d 514, 518 (1956); *Bullock v. Williams,* 212 N.C. 113, 117, 193 S.E. 170, 172 (1937).

**[1]**  One cannot escape liability for acts otherwise negligent because done under the stress of an emergency if such emergency was caused, wholly or in material part, by his own negligence or wrongful act. *Cockman v. Powers,* 248 N.C. 403, 407, 103 S.E. 2d 710, 713 (1958); *Brunson v. Gainey, supra,* at 156, 95 S.E. 2d at 517; 57 Am. Jur. 2d, Negligence § 93 (1971); 65 C.J.S., Negligence § 17(e) (1966).

.We note that the court gave the instruction quoted above rather than an instruction requested by defendant Bremson "that a person who creates the emergency or contributes to the creation of the emergency cannot take advantage of the doctrine of sudden emergency." However, the merit of plaintiff's assignment depends upon the correctness of the instruction given without regard to the correctness of the instruction requested by defendant Bremson but not given by the court.

**[2]**  "[T]he fact that the actor is not negligent after the emergency has arisen does not preclude his liability for his tortious conduct which has produced the emergency." 57 Am. Jur. 2d, Negligence § 93 (1973). *See, e.g., Rodgers v. Carter,* 266 N.C. 564, 568, 146 S.E. 2d 806, 810 (1966); *Brunson v. Gainey, supra,* at 156-57, 95 S.E. 2d at 517-18. "One cannot, by his negligent conduct, permit an emergency to arise and then excuse himself on the ground that he was called upon to act in an emergency." *Brunson v. Gainey, supra,* at 156, 95 S.E. 2d at 517.

In *Rodgers v. Carter,* 266 N.C. 564, 568-69, 146 S.E. 2d 806, 810 (1966), Justice Lake quotes with approval the following statement from the American Law Institute's Restatement of the Law of Torts, 2d Ed., § 296, *viz:*

" '(1) In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency which requires rapid decision is a factor in determining the reasonable character of his choice of action.

" '(2) The fact that the actor is, not negligent after the emergency has arisen does not preclude his liability for his tortious conduct which has produced the emergency.

* * *

" 'Where the emergency itself has been created by the actor's own negligence or other tortious conduct, the fact that he has then behaved in a manner entirely reasonable in the light of the situation with which he is confronted does not insulate his liability for his prior conduct. Such liability is not pre-.cluded by the fact that he has acted reasonably in the crisis which he has himself brought about. It is not his reasonable conduct in the emergency which makes him liable, but his prior tortious conduct creating the emergency.' "

Our decisions in *Rodgers v. Carter, supra,* and in *Brunson v. Gainey, supra,* are in accord with this statement. See also, *Annot.,* Disabled Vehicles—Personal Injuries, 27 A.L.R. 3d 12, 312 (1969), and numerous cases cited therein.

Decision depends upon the application of these well settled legal principles to the evidence in this particular case.

Obviously, the evidence does not show that the emergency situation confronting Bremson was "brought on" *solely* by his own negligence. There are conflicts in the evidence with reference to whether any part of the Chevrolet truck was in Brem-son's lane of travel. Too, diverse inferences may be drawn as to whether any part of the Ford truck extended into Bremson's lane of travel. Whatever the jury may have found with reference to these questions, uncontroverted evidence tends to show that the log chain had been connected to both trucks and was stretched across the lane for southbound travel during Brem-son's approach to the scene of collision.

Bremson's evidence tends to show that, as he approached the scene of collision, he observed nothing except the "bright lights" of a vehicle in the lane for northbound travel; and that, in the absence of notice to the contrary, he assumed this vehicle was *entirely* in its proper lane. His evidence tends to show he did not see any part of the Ford truck and, in the absence of notice to the contrary, he assumed his lane of travel was clear. Too, his evidence tends to show that he saw no person on or near the highway north of the trucks warning him by means of a flashlight or otherwise that he was approaching a zone of danger. Thus, when the evidence is considered in the light most

favorable to Bremson, he had no reason to anticipate that he was approaching a zone of danger and therefore did not become aware of the emergency created by the obstruction of his lane of travel until immediately prior to the collision. Assuming the jury so found, there was nothing Bremson could do at that moment to avoid striking one or both trucks and directly or indirectly striking the chain.

[3] The crucial question in respect of the applicability of the sudden emergency rule is whether Bremson, when approaching the scene of the collision, saw or by the exercise of due care should have seen that he was approaching a zone of danger, and whether his failure to decrease his speed and bring his car under control without first ascertaining the nature of the highway conditions ahead of him, constituted negligence on his part which *contributed to* the creation of the emergency thereafter confronting him. With reference thereto, when the evidence against defendant Bremson is considered in the light most favorable to the plaintiff, it was sufficient to permit, but not compel, a jury finding that negligence on the part of Bremson was one of the proximate causes of the emergency with which he was confronted immediately prior to the collision. In this connection, the evidence for consideration by the jury includes the testimony with reference to the lights on the Chevrolet truck, the lights on the Ford truck, and the evidence relating to Boykin's attempt to warn southbound motorists by a flashlight.

[4] The error in the portion of the charge challenged by plaintiff's assignment is aggravated by the fact that the court gave no instruction purporting to draw into focus for decision by the jury the factual bases for determining whether the sudden emergency rule was available to Bremson. We hold that the portion of the charge to which plaintiff excepted was erroneous by reason of the court's failure to instruct the jury that the sudden emergency rule would not be available to Bremson in the event his prior negligence contributed to the creation of the emergency as a proximate cause thereof. As in *Rodgers v. Thompson*, 256 N.C. 265, 123 S.E. 2d 785 (1962), where a new trial was ordered on account of error in the charge, the following statement by Justice (later Chief Justice) Parker is appropriate here, *viz:* "The court in its charge on conduct in emergencies did not state to the jury that the doctrine does not apply if the peril or emergency was caused or contributed to by plaintiff's negligence or was occasioned by concurrent negli-

gence of the plaintiff and defendants." *Id.* at 275, 123 S.E. 2d at 791.

[5] Although unrelated to the basis of decision herein, we note that the second paragraph of the portion of the charge to which Exception No. 52 is addressed placed upon Bremson the burden of establishing by the greater weight of the evidence that he was confronted by a sudden emergency. This portion of the instruction was erroneous and prejudicial to Bremson. The sudden emergency rule is a mere application of the rule of the prudent man. It raises no separate issue with reference to the burden of proof. See, *Annot.*, Sudden Emergency Instructions, 80 A.L.R. 2d 5, 30 (1961). The burden of proof rested upon plaintiff to satisfy the jury by the greater weight of the evidence that negligence on the part of defendant Bremson proximately caused her injuries. Instructions with reference to the rule applicable when a motorist is confronted by a sudden emergency should be given whenever the evidence discloses a factual situation appropriate for such instructions. *Rodgers v. Carter, supra,* at 568, 146 S.E. 2d at 810.

Although defendants Bissette and Godwin did not petition for *certiorari*, they request this Court in the exercise of its general supervisory jurisdiction to consider their contentions that the trial judge erred in denying their motions for directed verdicts in respect of plaintiff's claim and in respect of defendant Bremson's cross-action. Suffice to say, we do not deem this a situation that calls for the exercise of our supervisory jurisdiction.

The foregoing leads to this conclusion: Decision of the Court of Appeals awarding a new trial on all issues is affirmed. However, in respect of the issues arising on the pleadings in plaintiff's action against defendant Bremson, the new trial is awarded for error in the court's instructions in connection with Issue No. I with reference to the doctrine of sudden emergency, not for error in respect of the burden of proof with reference to the issues as between plaintiff and defendant Bremson. With this modification in respect of the ground of decision, the decision of the Court of Appeals is affirmed.

Modified and affirmed.