BILLY GRAY WILLIAMS v. LINN HAMILTON JONES AND LLOYD HASSELL JONES

No. 8017SC1008

(Filed 21 July 1981)

**1. Automobiles § 11.5— vehicle parked on highway—instructions inadequate**

In an action to recover damages suffered by plaintiff when his vehicle collided with that of defendant which was stopped at night in the 12 foot wide outside traffic lane of a four-lane two-way highway where the evidence tended to show that the highway shoulder was 10 feet wide with a 4 foot paved buffer and a 6 foot grassy area, that the motor of defendant's vehicle stopped while moving downhill, that several times defendant put in the clutch and tried down shifting in other gears in an effort to start the motor and that it was

foggy in the area where the collision occurred, the trial court should have instructed the jury that plaintiff had the burden of proving that defendant violated G.S. 20-161(a) by parking or leaving standing his vehicle on the paved portion of the highway when he had the opportunity to park the vehicle on the shoulder of the highway, and that the burden was on defendant to prove that he was excused from such parking because it was not reasonably practical under the circumstances to avoid stopping on the paved portion of the highway.

**2. Automobiles § 90.11— sudden emergency—failure to instruct improper**

In an action to recover damages sustained by plaintiff in an automobile accident, the trial court erred in failing to charge on the doctrine of sudden emergency as requested by plaintiff where the evidence tended to show that plaintiff saw defendant's vehicle in his traffic lane when he was four car lengths away; plaintiff did not pull onto the left lane because he was afraid that he would be hit by a tractor trailer behind him in that lane; plaintiff probably could have pulled to the right but he would have been on a narrow grassy area and a guardrail was there; the entire shoulder was only 10 feet wide; and there was fog in the area at the time of the collision.

APPEAL by plaintiff from *Walker (Hal Hammer), Judge.* Judgment entered 29 May 1980 in Superior Court, SURRY County. Heard in the Court of Appeals 28 April 1981.

This case involves both claims and counterclaims for personal injuries and property damages arising out of a rear-end collision between a 1970 Plymouth taxi being driven by the plaintiff Williams and a stalled 1972 Datsun pickup owned by the defendant Lloyd Hassell Jones and being operated by the defendant Linn Hamilton Jones on U.S. Highway 52. At the time of impact, the defendant Linn Hamilton Jones was in the process of attempting to push the pickup off the traveled portion of the highway. The case was tried solely on the question of liability. The plaintiff appealed from an adverse jury verdict and to the trial court's denial of the plaintiff's motions for a directed verdict, judgment notwithstanding the verdict, or a new trial.

The accident complained of occurred around midnight Sunday evening, 22 August 1977 in the right (westernmost) southbound travel lane of four-lane U.S. Highway 52. The point of impact was located between one-half and three-quarters of a mile south of the Reaves Road overpass in Surry County. From the Reaves Road overpass down to the point where the accident occurred, the roadway proceeds down a hill, then levels off. There are no obstructions between the point where the accident occurred and the

Reaves Road overpass. U.S. Highway 52 at this point has two lanes for southbound traffic, 12 feet wide each, for a total width of 24 feet. To the west of the southbound lanes of travel, there is a 10-foot wide shoulder, consisting of a 4-foot wide paved buffer and a 6-foot wide grassy area and a guardrail. There is sufficient room between the guardrail and the white line on the west edge of the highway to drive the vehicle completely off the road.

The speed limit on U.S. Highway 52 was 55 miles per hour at the time of the accident; there were no lights on the highway and no illuminated signs in the area. The evidence was conflicting on the weather conditions and visibility at the time of the accident. The plaintiff testified that the accident occurred after he entered an area of fog at the bottom of the hill. The defendant Linn Hamilton Jones maintained that, at the time of the accident, the weather was clear, such that he could see from his truck all the way back to the Reaves Road overpass. The investigating officer testified that the weather conditions were foggy when he arrived at the scene about 12:45 a.m.

At the time of the accident, the defendant Linn Hamilton Jones was returning to his home in Pilot Mountain from a weekend with a friend in Mt. Airy driving his father's 1972 Datsun pickup. When Jones attempted to leave his friend's home shortly after 11:00 p.m. Sunday evening, the pickup initially would not start. The engine turned over slowly; Jones "supposed" that the battery "had run down or something." Jones push-started the truck by allowing the truck to roll forward down the hill from where he had parked it earlier and letting the clutch out. He noticed that the gasoline needle in the truck was slightly above empty. Although he testified that the vehicle had gasoline, he also testified that he stopped to purchase gasoline at two stations but they were closed.

While proceeding south on U.S. Highway 52 at a speed of 30 to 35 miles per hour in a 55 miles per hour zone, Jones testified that the truck "went dead." He attempted to restart the vehicle while the vehicle was moving by pushing the clutch in and out and down-shifting through other gears. Jones maintained that although the truck stopped running, the lights did not dim at all. He told the investigating officer that the vehicle acted like it was out of gas. The entire truck stopped in the right (westernmost)

southbound lane. Before the truck stopped, Jones did not try to drive the truck off the road. As soon as the truck stopped, Jones was aware of the need to remove the truck from the road.

When the truck stopped, Jones looked in his rearview mirror and saw no lights or anything else behind him; he was able to see all of the way back to the bridge. He got out of the truck, checked the roadway, and saw no vehicles coming up behind him. Jones, a weight lifter, had on previous occasions physically lifted his truck up off the ground. After stepping out and looking back to see that there was no traffic coming, he turned the steering wheel all of the way to the right, placed his hand on the door jamb and pushed the vehicle. He felt the right front wheel go off the road. The night was quiet and he heard no traffic from any direction. As Jones felt the right front wheel go off the pavement, he saw some glare from headlights reflecting in his windshield, heard tires squeal and tried to turn around. However, before he could turn his head around, Mr. Williams' car hit the truck.

At the time of the accident, the plaintiff Billy Gray Williams and his passenger were proceeding south on U.S. Highway 52 in Mr. Williams' taxi. As he proceeded down the hill from the Reaves overpass, the plaintiff, traveling between 45 and 50 miles per hour, encountered a foggy area. A tractor-trailer began to pass in the left lane. As he entered this area at the bottom of the hill, he saw the pickup no more than four car-lengths away sitting in the middle of his lane without any lights. The plaintiff applied brakes, but could not stop in time and hit the rear of the pickup. He could not pass to the left because of the tractor-trailer. The plaintiff's passenger also stated that, as he and the plaintiff entered the denser foggy area, he was watching the roadway and suddenly saw a pickup in the right lane. The plaintiff's passenger saw no lights and recalled that the accident happened "so fast."

The investigating officer measured 62 feet of tire impressions traceable to Mr. Williams' 1970 Plymouth. The officer determined the point of impact from the debris to be in the middle of the right southbound lane. Mr. Williams' Plymouth traveled 31 feet after impact. The officer recalled that the plaintiff Williams stated at the scene that the boy appeared to be standing there looking at Williams at the time of the accident. The jury found

that on plaintiff's claim defendant was not negligent, and on defendant's counterclaim that plaintiff was negligent.

*Tuggle, Duggins, Meschan, Thornton & Elrod by Kenneth R. Keller and Max D. Ballinger for plaintiff appellant.*

*Hudson, Petree, Stockton, Stockton & Robinson by Michael L. Robinson, and James H. Kelly, Jr.; Faw, Folger, Sharpe & White by Richard Pardue and W. Thomas White for defendant appellees.*

CLARK, Judge.

[1] Did the trial court err in instructing the jury on the issue of defendant's negligence in violating G.S. 20-161(a) by parking or leaving standing the motor vehicle on the paved portion of the highway? In determining this issue, it is significant that the un-contradicted evidence disclosed that the vehicle operated by defendant Linn Jones stopped at night in the 12-foot wide outside traffic lane of a four-lane two-way highway. The highway shoulder was 10 feet wide, with a 4-foot paved buffer and 6-foot grassy area. The motor of his vehicle stopped while moving downhill, and several times he put in the clutch and tried down-shifting in other gears in an effort to start the motor. Plaintiff offered evidence, denied by defendant, that it was foggy in the area where the collision occurred.

G.S. 20-161(a) provides as follows:

"No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled portion of any highway or highway bridge outside municipal corporate limits unless the vehicle is disabled to such an extent that it is impossible to avoid stopping and temporarily leaving the vehicle upon the paved or main-traveled portion of the highway or highway bridge."

Defendant takes the position that there was no prejudice to plaintiff because G.S. 20-161(a) was not applicable in that defendant did not "park or leave standing" his vehicle within the meaning of the statute. Defendant testified that when his vehicle stopped he got out, turned the wheels to the right, began pushing the vehicle toward the shoulder, and he felt the right front wheel go off the road. Plaintiff testified that the pickup was in the mid-

dle of the lane, and he told trooper R. L. Morris that defendant was standing beside his pickup looking at plaintiff's approaching vehicle.

In many cases the courts of this State have interpreted the terms "park" or "leave standing" as used in G.S. 20-161(a) as meaning something more than a mere temporary stop on the road for a necessary purpose. See 2 Strong's N.C. Index 3d *Automobiles* § 11 (1976) and cases cited. Whether the stop, though temporary, was for a necessary purpose is a factor to be considered in determining a violation of G.S. 20-161(a). And in several cases where the stop on the highway was the result of mechanical trouble or a flat tire it was held that the statute was violated if the operator had the opportunity and sufficient area to park off the highway on the shoulder. *Sharpe v. Hanline*, 265 N.C. 502, 144 S.E. 2d 574 (1965); *Melton v. Crotts*, 257 N.C. 121, 125 S.E. 2d 396 (1962). 2 Strong's N.C. Index 3d *Automobiles* § 11.5.

This evidence was sufficient to require the trial judge, in applying the law to the evidence as required by G.S. 1-180, to charge on the violation of G.S. 20-161(a) in instructing on the first issue, the negligence of the defendant. The evidence tended to show that defendant Linn Jones had the opportunity to drive the disabled vehicle to a position of safety on the shoulder of the highway.

In instructing the jury the trial court read G.S. 20-161(a), added that a violation of the statute was negligence within itself, stated that defendant contended the vehicle stopped suddenly and it was impossible to avoid stopping on the paved portion of the highway, and then concluded: "So if you find that he violated that and that it was not impossible to avoid stopping and if you find that that was one of the proximate causes of the accident, it would be your duty to answer the first issue 'yes', in favor of the plaintiff." No contention of the plaintiff was stated.

Whether the disablement of defendant's vehicle justified him in stopping in the middle of the paved traffic lane was a question for the jury under proper instructions from the court, but the instruction of the court did not properly explain G.S. 20-161(a) and apply its provisions to the evidence.

The burden was on the plaintiff to prove that defendant violated the statute. If defendant was to escape the consequences

of this violation, the defendant had the burden of bringing himself within the provision that "it is impossible to avoid stopping . . . ." G.S. 20-161(a); *see Melton v. Crotts, supra.* The word "impossible" does not mean physical, absolute impossibility but rather means not reasonably practical under the circumstances. *Id.;* 2 Strong's N.C. Index 3d *Automobiles* § 11. Statutes in other jurisdictions having the "impossible" provision similar to G.S. 20-161(a) have been so interpreted. See 60A C.J.S., *Motor Vehicles* § 332, p. 383 (1969).

In *Melton*, the court held that whether the puncture and flat tire at a point where the operator of a motor vehicle could not get off the highway for several hundred feet were sufficient to warrant him in stopping to change tires, leaving a part of his vehicle on the paved part of the highway, was a question for the jury. In *Sharpe v. Hanline*, 265 N.C. 502, 504, 144 S.E. 2d 574, 576 (1965), defendant's vehicle was parked about 10 inches on the paved portion of a four-lane highway with a shoulder 15 to 18 feet wide. The court stated: "In our opinion, the provisions of G.S. 20-161 require that no part of a parked vehicle be left protruding into the traveled portion of the highway when there is ample room and it is practicable to park the entire vehicle off the traveled portion of the highway."

The trial court should have instructed the jury that plaintiff had the burden of proving that defendant violated G.S. 20-161(a) by parking or leaving standing his vehicle on the paved portion of the highway when he had the opportunity to park the vehicle on the shoulder of the highway, and that the burden was on the defendant to prove that he was excused from such parking because it was not reasonably practical under the circumstances to avoid stopping on the paved portion of the highway. The failure to so charge was error which was prejudicial to the plaintiff.

[2] The plaintiff also assigns as error the failure of the trial court to instruct the jury on the doctrine of sudden emergency, though requested by plaintiff. The doctrine was recently stated in *Foy v. Bremson*, 286 N.C. 108, 116-17, 209 S.E. 2d 439, 444 (1974) as follows:

"An automobile driver who, by the negligence of another and not by his own negligence, *is suddenly placed in an*

emergency and compelled to act instantly to avoid a collision or injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he made neither the wisest choice nor the one that would have been required in the exercise of ordinary care except for the emergency."

The plaintiff testified that he saw defendant's vehicle in his traffic lane when he was four car-lengths away, that he did not pull onto the left lane because he was afraid that he would be hit by a tractor-trailer behind him in that lane, that he probably could have pulled to the right but he would have been on a narrow grassy area and a guardrail was there. This testimony and the other circumstances, including evidence that the shoulder was 10 feet wide and that there was fog in the area, make the doctrine of sudden emergency applicable, and the court erred in not charging on the doctrine as requested by the plaintiff.

These errors were prejudicial to the plaintiff in the determination of the issues submitted to the jury on both plaintiff's claim and defendant's counterclaim.

The judgment is reversed and we order a

New trial.

Judges HEDRICK and WELLS concur.