BETTYE HAIRSTON, ADMINISTRATRIX OF THE ESTATE OF JOHN O. HAIRSTON, PLAINTIFF v. ALEXANDER TANK AND EQUIPMENT CO. AND HAYGOOD LINCOLN MERCURY, INC., ORIGINAL DEFENDANTS

— AND —

ALEXANDER TANK AND EQUIPMENT CO., THIRD PARTY PLAINTIFF v. JAMES FULTON WHITBY AND TWO-WAY RADIO OF CHARLOTTE, INC., THIRD PARTY DEFENDANTS

No. 8226SC55

(Filed 18 January 1983)

1. **Automobiles and Other Vehicles § 87.4— negligence in failing to tighten wheel lugs—insulating negligence by truck driver**

    In an action to recover for the wrongful death of plaintiff's intestate who was killed while standing behind his new car after the left rear wheel came off, the negligence of defendant car dealer in failing to tighten the lug bolts on the left rear wheel and in failing to check the car before delivery to the intestate was insulated by the negligence of defendant truck driver in failing to keep a proper lookout and in failing to keep his vehicle under proper control, and thus was not a proximate cause of the death of plaintiff's intestate, where the evidence tended to show that the intestate's car was stopped in the right northbound lane of a divided four-lane highway; a van with its emergency flashers on stopped some 20 feet behind the car; the left northbound lane remained free at all times; the right front of defendant driver's flatbed truck struck the van and knocked it into plaintiff's intestate; the van had been stopped in the highway for 90 seconds; defendant truck driver was driving at 45 miles per hour and had a clear and unobstructed view downgrade for at least a quarter of a mile from the van; when defendant driver was 300 feet from the van, a car 100 feet ahead signaled a left turn, moved to the left lane

and passed the van; and defendant driver was more than 250 feet from the van when he realized the van was not moving.

**2. Automobiles and Other Vehicles § 21.1— sudden emergency—negligence creating emergency**

Defendant was not entitled to invoke the doctrine of sudden emergency where the evidence showed that his negligence created in whole or in part the emergency he contends confronted him.

**3. Rules of Civil Procedure § 59; Trial § 52.1— judgment n.o.v. for one defendant—refusal to set aside verdict**

The trial court did not err in refusing to set aside the verdict for plaintiff as being excessive after the court had entered a judgment n.o.v. for one of the two defendants found by the jury to be negligent and thus liable to plaintiff for damages. G.S. 1A-1, Rule 59.

APPEAL by plaintiff and defendant Alexander Tank and Equipment Company from *Lewis, Judge.* Judgment entered 11 June 1981 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 8 November 1982.

This is an action for wrongful death in which plaintiff's intestate was killed while standing at the rear of his parked automobile on Interstate Highway 85 in Mecklenburg County. Defendant Alexander Tank and Equipment Company appeals, contending the trial court erred in failing to instruct the jury on the doctrine of sudden emergency; in denying its motion for a new trial on grounds that the damages were excessive; in allowing the defendant Haygood Lincoln Mercury's motion for judgment notwithstanding the verdict; and in denying defendant Alexander Tank and Equipment Company's motion that the court's ruling on its motions under Rule 15 of the North Carolina Rules of Civil Procedure be without prejudice as to any rights of contribution defendant may have had by Chapter 1B of the North Carolina General Statutes. Plaintiff appeals the ruling of the trial court granting the motion for judgment notwithstanding the verdict of defendant Haygood Lincoln Mercury. The claim by Alexander Tank and Equipment Company against James Fulton Whitby and Two-Way Radio of Charlotte and a counterclaim by Two-Way Radio of Charlotte have been disposed of and are not a part of this appeal. Other questions less significant will be discussed in the body of the opinion.

*Tucker, Hicks, Sentelle, Moon & Hodge, by John E. Hodge Jr., Fred A. Hicks and David B. Sentelle, for plaintiff-appellant.*

*Golding, Crews, Meekins, Gordon & Gray, by Fred C. Meekins and Henry C. Byrum Jr.; and Hasty, Waggoner, Hasty, Kratt & McDonnell, by Robert D. McDonnell and William J. Waggoner, for defendant-appellant Alexander Tank and Equipment Company.*

*Hedrick, Feerick, Eatman, Gardner & Kincheloe, by J. A. Gardner III and Scott M. Stevenson, for defendant-appellee Haygood Lincoln Mercury, Inc.*

HILL, Judge.

Plaintiff's intestate, John O. Hairston (hereinafter "Hairston"), contracted to purchase a new 1978 Lincoln Continental from defendant Haygood Lincoln Mercury, Inc. (hereinafter "Haygood") on Friday, 14 April 1978 and returned to consummate the purchase on Monday, 17 April 1978. Hairston lived in Charlotte, North Carolina; Haygood is in Lowell, North Carolina. Hairston waited at Haygood while the wheels on his Lincoln were changed to conform to the invoice of purchase. One of Haygood's employees changed the wheels but, in doing so, failed to tighten the lug nuts securing the left rear wheel. This went unnoticed, since Haygood neither inspected the job further nor test drove the new car as was customary. Hairston left Haygood at about 5:00 p.m., first traveling along Highway 7 some three miles to its intersection with Interstate 85 (hereinafter "I-85") and then took I-85.

I-85 is a four-lane, divided northbound-southbound highway with two lanes going in each direction. Each lane is 12 feet wide, making a total of 24 feet of travel area in each direction. At the point of its intersection with Highway 7, the northbound lane of I-85 veers gradually to the right and then runs straight to the South Fork River bridge that is some 1616 feet from the intersection. I-85 is slightly downgrade from the intersection to the bridge, but levels out a short distance before the bridge is crossed. There are no obstructions from the ramp intersection to the bridge.

On this day, 17 April 1978, the weather was clear; visibility was good. It was daylight. Traffic was moderate.

As Mr. Hairston drove in the right lane of northbound I-85 approaching the bridge, the left rear wheel of his automobile came off. Hairston, still in the right lane, stopped after traveling some 170 feet on the bridge, 208 feet from the place where the wheel fell. The left northbound lane of traffic remained clear at all times.

James Fulton Whitby, driving a 1970 Econoline van for his employer, Two-Way Radio of Charlotte, Inc., stopped in the right lane some 20 feet behind Hairston's car, activating his emergency flashers and called for help on the telephone in his van. The van, which was approximately seven feet tall, was higher than the normal passenger vehicle, red and rust colored, with a white top and bumper.

Robert G. Alexander was traveling north on I-85, driving a GMC cab on a flatbed truck owned by Alexander Tank and Equipment Company (hereinafter "Alexander Tank"). The flatbed was traveling 45 miles per hour in the right lane. Witnesses saw the flatbed traveling a quarter of a mile behind the van, far enough from the van for it to be fully visible to Mr. Alexander. The Alexander truck was larger and higher than the van, and Mr. Alexander's range of vision in the cab was farther than the range of vision in an ordinary car. The seat on which Alexander sat was nearly four feet off the ground. A car was traveling in the same lane approximately 100 feet in front of the flatbed. When this car was about 200 feet behind the stopped van, it moved to the left lane to pass the van. When the car changed lanes, Alexander was about 100 feet behind it. Alexander had seen the van as he approached, but testified he was about 120 feet from it when he realized the van was stopped. Alexander began a "gradual moving out" to the left lane. The right front of his truck, however, struck the van which was thrust forward, crushing Hairston, who had gotten out of his car and apparently was trying to open the trunk of his car. Hairston was killed. Whitby had told him earlier to get back in his car. Approximately 90 seconds had elapsed from the time Whitby had stopped the van until it was struck by the flatbed.

After the accident, the Hairston car was 350 feet north of the south end of the bridge. The Two-Way van was 310 feet, and the Alexander Tank truck was 400 feet from the same point.

At the conclusion of the evidence, the trial court denied a motion by Haygood for a directed verdict under N.C. Rules Civ. Pro. 50(a). The judge submitted separate issues of negligence to the jury, and the jury found both defendants liable. The jury awarded damages of $200,000. After the jury rendered its verdict, the trial court, upon Haygood's motion, awarded judgment n.o.v. to Haygood. Plaintiff Hairston and defendant Alexander Tank appealed.

Judgment n.o.v. is entered in accordance with a movant's earlier motion for a directed verdict, notwithstanding the contrary verdict actually returned by the jury. *Summey v. Cauthen,* 283 N.C. 640, 197 S.E. 2d 549 (1973).

> On a motion by defendant for a directed verdict in a jury case, the court must consider the evidence in the light most favorable to the plaintiff and may grant the motion only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiff. All the evidence which tends to support plaintiff's claim must be taken as true and viewed in the light most favorable to the plaintiff, giving the plaintiff the benefit of every reasonable inference which may be legitimately drawn therefrom. [Citations omitted.] A trial court should deny a defendant's motion for a directed verdict under G.S. 1A-1, Rule 50(a) when viewing the evidence in the light most favorable to the plaintiff and giving plaintiff the benefit of all reasonable inferences, the court finds any evidence more than a scintilla to support plaintiff's *prima facie* case in all its constituent elements. [Citation omitted.]

*Jones v. Allred,* 52 N.C. App. 38, 41, 278 S.E. 2d 521, 523, *aff'd per curiam,* 304 N.C. 387, 283 S.E. 2d 517 (1981). The question before the Court is whether plaintiff has introduced sufficient evidence of actionable negligence to take her case to the jury. *See Norwood v. Sherman-Williams Co.,* 303 N.C. 462, 279 S.E. 2d 559 (1981).

[1] Defendant Haygood moved for a directed verdict on grounds that the evidence failed to show Haygood was negligent and that if any negligence was shown, it was insulated as a matter of law by the intervening negligence of defendant Alexander Tank. There was evidence from which the jury could find that Haygood negligently failed to install properly the left rear wheel on the

Hairston car and to inspect the car thereafter; that the wheel came off and the car was damaged as a result. The parties by stipulation have eliminated the question of property damage, however, and limited the case to an action for wrongful death. We address the question whether Haygood's negligence was a proximate cause of Hairston's death (it having been stipulated that Mr. Hairston's death resulted from the accident) and was properly submitted to the jury, or whether Haygood's negligence was insulated as a matter of law by the negligence of defendant Alexander Tank.

To recover damages for injury arising out of actionable negligence, the plaintiff must show: (1) failure of defendant to exercise proper care in the performance of some legal duty owed the plaintiff by the defendant under the circumstances, and (2) that such negligent breach of duty was the proximate cause of the injury, a cause that produced the result in continuous sequence, and without which it would not have occurred, and one from which a person of ordinary prudence could have foreseen that such result was probable under the facts as they existed. *McNair v. Boyette*, 282 N.C. 230, 192 S.E. 2d 457 (1972); *Moody v. Kersey*, 270 N.C. 614, 155 S.E. 2d 215 (1967); *Morris v. Transport Co.*, 235 N.C. 568, 70 S.E. 2d 845 (1952).

Associated with the doctrine of proximate cause is the doctrine of insulating negligence.

> This doctrine of insulating the negligence of one by the subsequent intervention of the active negligence of another really belongs to the definition of proximate cause. [Citation omitted.] . . . "While there may be more than one proximate cause, that which is new and entirely independent breaks the sequence of events and insulates the original or primary negligence." [Citation omitted.]

*Butner v. Spease and Spease v. Butner*, 217 N.C. 82, 87, 6 S.E. 2d 808, 810 (1940). The doctrine of insulating negligence was aptly quoted by Chief Justice Stacy in *Powers v. Sternberg*, 213 N.C. 41, 195 S.E. 88 (1938):

> "Where a second actor has become aware of the existence of the potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negli-

gence, brings about an accident, the first tort-feasor is re-
lieved of liability, because the condition created by him was
merely a circumstance of the accident and not its proximate
cause. Where, however, the second actor does not become ap-
prised of such danger until his own negligence, added to that
of the existing perilous condition, has made the accident in-
evitable, the negligent acts of the two tort-feasors are con-
tributing causes and proximate factors in the happening of
the accident and impose liability upon both of the guilty par-
ties."

213 N.C. at 44, 195 S.E. at 90, *quoting Kline et al., aplnts. v.
Moyer and Albert*, 325 Pa. 357, 364, 191 A. 43, 46 (1937).

Plaintiff argues that Haygood's negligence is one of two prox-
imate causes and that Haygood and Alexander Tank are jointly
liable. Plaintiff further contends that if the risk of some injurious
consequence is reasonably foreseeable, proximate cause exists,
and the negligence of an intervenor [Alexander Tank] does not in-
sulate the primary tort-feasor [Haygood] from liability; it only
adds a party with whom the liability can be shared.

As Chief Justice Stacy said:

[T]he application of the doctrine of insulating the negligence
of one by the subsequent intervention of the active negli-
gence of another, as a matter of law, is usually fraught with
some knottiness. [Citation omitted.] However, the principle is
a wholesome one, and must be applied in proper instances.
[Citations omitted.]

*Butner v. Spease, supra* at 85, 6 S.E. 2d at 810. The proper in-
quiry is:

Was there an unbroken connection between the wrongful act
and the injury — a continuous operation? Did the facts con-
stitute a continuous succession of events, so linked together
as to make a natural whole, or was there some new and in-
dependent cause intervening between the wrong and the in-
jury?

*Id.* at 87, 6 S.E. 2d at 811.

"[E]xcept in cases so clear that there can be no two opinions
among men of fair minds, the question should be left to the

jury to determine whether the intervening act and the result-
ant injury were such that the author of the original wrong
could reasonably have expected them to have occurred as a
result of his own negligent act."

*Davis v. Jessup and Carroll v. Jessup*, 257 N.C. 215, 220, 125 S.E.
2d 440, 443 (1962).

The parties have cited cases supporting their respective
theories of joint liability and insulating negligence. A careful
reading of the cases reaffirms the adage: "Each tub rests on its
own bottom." Each case must be decided on its facts. The record
clearly shows sufficient evidence from which the jury could find
Haygood was negligent in failing to tighten the lug bolts on the
left rear wheel and in failing to check the new car before
delivery. These acts of negligence, however, are not the prox-
imate cause of the death of plaintiff's intestate, and such
negligent acts of Haygood are insulated by the subsequent
negligent acts of Alexander.

The record tends to show that the cab on the flatbed truck
operated by Alexander was seven feet tall, and the seat was four
feet from the ground—tall enough for Alexander to see over the
cars ahead of him. In fact, he testified that it was his practice to
"look over the particular car that is in front of one [sic] to see
what's ahead." The cab was as tall as the Two-Way Radio van,
which was taller than an ordinary passenger car. Alexander
testified the car in front of his truck was lower than eye level.

As Alexander drove north on Interstate 85 that day, he had a
clear and unobstructed view for at least a quarter of a mile
downgrade to the South Fork River bridge. He was traveling
with the flow of traffic at 45 miles per hour. An ordinary
passenger car traveling at the same rate of speed was 100 feet in
front of him. When the car in front was 200 feet south of the
parked Two-Way Radio van, it signaled a left turn and moved to
the left lane and passed the van. Alexander was 100 feet behind
the car at the time it started to pull out—a total of 300 feet
behind the van. Alexander's testimony indicates that *before* the
car in front of him changed lanes he could see the top of the van,
". . . and I didn't realize it wasn't moving at that time." On
another occasion, Alexander testified he was 250 feet *from the
bridge* when he realized the van had stopped.

The van had been stopped on the bridge for 90 seconds. It was visible for a quarter of a mile. It could have been seen within the distance and framework of time by Alexander had he been keeping a proper lookout. We conclude that Alexander was negligent in failing to keep a proper lookout for vehicles stopped on the highway and in failing to keep his vehicle under proper control.

> [I]t is the duty of the driver of a motor vehicle not merely to *look*, but to *keep a lookout* in the direction of travel; and he is held to the duty of seeing what he ought to have seen.

*Wall v. Bain*, 222 N.C. 375, 379, 23 S.E. 2d 330, 333 (1942), *quoted in Ennis v. Dupree*, 258 N.C. 141, 145, 128 S.E. 2d 231, 234 (1962), *rev'd on other grounds*, 262 N.C. 224, 136 S.E. 2d 702 (1964).

We conclude there was no evidence whatsoever to justify Alexander's failure to see the van in time to take evasive action. If he saw the van, as he testified, he was negligent in failing to notice that it was not moving. If he failed to note that it was not moving until after the car in front of him had removed itself from the lane of traffic, then he failed to see what he should have seen. These negligent acts of Alexander — new and independent of any negligent acts of Haygood — constitute the proximate cause of injury and the death of plaintiff's intestate, and the negligence of Haygood was shielded by the subsequent acts of negligence by Alexander. This assignment is overruled.

[2] Defendant Alexander Tank argues that the trial court's failure to instruct the jury on the doctrine of sudden emergency was prejudicial and reversible error. Defendant had pleaded the doctrine in its answer; contends it had offered evidence to support the allegations; and requested before and after the trial court's charge to the jury that the court give a substantive charge to the jury on this defense.

The sudden emergency doctrine has recently been restated by this Court in the case of *Williams v. Jones*, 53 N.C. App. 171, 177-178, 280 S.E. 2d 474, 477 (1981):

> An automobile driver, who, by the negligence of another and not by his own negligence, is suddenly placed in an emergency and compelled to act instantly to avoid a collision or injury, is not guilty of negligence if he makes such a choice as a

person of ordinary prudence placed in such a position might make, even though he made neither the wisest choice nor the one that would have been required in the exercise of ordinary care except for the emergency.

The Supreme Court in *Brunson v. Gainey*, 245 N.C. 152, 157, 95 S.E. 2d 514, 518 (1956), stated:

It is not the conduct in the emergency that the law does not excuse. There is no culpability in such conduct. It is the negligent conduct which brought about the emergency which the law does not excuse. The act done in the emergency immediately causing the injury is a mere link in the causal chain connecting the negligent act, which brought about the emergency, with the injury. It is this negligent act, and not the non-negligent act done in the emergency, that liability springs from. [Citation omitted.]

A party is not entitled to invoke the doctrine of sudden emergency in exculpation of his negligence if his negligence brought about the sudden emergency or contributed to it in whole or in part. *Boykin v. Bissette*, 260 N.C. 295, 132 S.E. 2d 616 (1963); *Rodgers v. Thompson*, 256 N.C. 265, 123 S.E. 2d 785 (1962). The fact that a person is not negligent after an emergency has arisen does not preclude his liability for his negligent conduct that produced the emergency. When an emergency is created by the actor's own negligence or other tortious conduct, the fact that he then behaves in a manner entirely reasonable in light of the situation with which he is confronted does not insulate his liability for his prior conduct. *Foy v. Bremson*, 286 N.C. 108, 209 S.E. 2d 439 (1974). Based on the evidence before the Court, as outlined above, we conclude that, when viewed in the light most favorable to defendant, Alexander's negligence created in whole or in part the emergency he contends confronted him.

[3] Defendant Alexander Tank next asserts the trial court erred in denying its motion for a new trial under Rule 59, N.C. Rules Civ. Pro. on grounds that the jury verdict for damages was excessive and given under the influence of passion. We find no error.

Defendant's contention that the verdict was given under the influence of passion is not argued. In support of the argument

that the damage was excessive, Alexander Tank argues that the jury was led to believe there were two culpable, solvent defendants that it might hold accountable for plaintiff's intestate's death. Defendant contends that the trial court's entry of judgment n.o.v. left Alexander Tank saddled with a verdict that was inflated, excessive and prejudicial because it was returned by the jury as a verdict against two defendants, not defendant Alexander Tank alone.

We do not try to second-guess a jury. Rather, we note that our trial judges exercise their discretionary power in civil cases sparingly in proper deference to the finality and sanctity of a jury's findings. We place great faith and confidence in the ability of our trial judges to make the right decision without partiality regarding a motion for judgment n.o.v. Hence, we conclude that an appellate court should not disturb a trial judge's ruling on a judgment n.o.v. unless it is reasonably convinced by the total record that the trial judge's ruling probably amounted to a substantial miscarriage of justice. We hold such was not the case in this lawsuit. *See Worthington v. Bynum and Cogdell v. Bynum,* 305 N.C. 478, 290 S.E. 2d 599 (1982). The assignment is overruled.

We have examined the remaining assignments of error assigned by all parties and find them either moot in light of our holdings herein or meritless.

The parties herein received a fair trial, free of prejudicial error.

No error.

Judges ARNOLD and WHICHARD concur.